39 F.3d 684
 63 USLW 2315, 30 Fed.R.Serv.3d 31
 UNITED STATES of America, Plaintiff-Appellee,
v.
MICHELLE'S LOUNGE, 14199 S. Cicero, Crestwood, Illinois,
Auto Abbey, 15244 South Broadway, Harvey,
Illinois, 15240 South Broadway, Harvey,
Illinois, et al., Defendants.
Appeal of Biagio J. MESSINO, Clement Messino, Pamela
Messino, et al., Claimants-Appellants.
 No. 92-3235.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 8, 1994.
Decided Oct. 27, 1994.
 
 Elizabeth M. Landes, Asst. U.S. Atty., Crim. Div., Chicago, IL (argued), for the U.S.
 Joseph P. Storto, Bensenville, IL, E.E. Edwards, III (argued), Edwards & Simmons, Nashville, TN, for Biagio J. Messino, Clement Messino, Pamela Messino, Blaise Messino, Paul Messino, Chris B. Messino, Joseph Salamone, Ted Borowski, B & C Auto Repair, James Simmons, Oak Classic Auto, Mark I Auto.
 Joseph P. Storto, Bensenville, IL, E.E. Edwards, III, Edwards & Simmons, Nashville, TN, Fiona M. DiIorio, Bensenville, IL, for Katherine Schultz, Maribeth Messino, Joseph Messino, Sheri Penciak.
 Before CUDAHY, ESCHBACH and FLAUM, Circuit Judges.*
 CUDAHY, Circuit Judge.
 
 
 1
 On September 12, 1991, the United States filed under seal an in rem complaint pursuant to 21 U.S.C. Secs. 881(a)(5), (a)(6) and (a)(7), seeking forfeiture of personal property and seven parcels of real estate. The complaint alleged that Clement Messino was a cocaine dealer and had acquired extensive assets with the proceeds of his drug dealing. The real property included Messino's auto shop and garage (the Auto Abbey), which the complaint alleged was a cover for drug dealing; his home, in which he allegedly stored drug proceeds; the home of Messino's girlfriend, Kathy Lewis, at which Messino allegedly stored vehicles acquired with drug proceeds; and a piece of undeveloped property alleged to have been purchased with tainted money. After an ex parte hearing, the district court found probable cause that the property was forfeitable, and granted a warrant for seizure of the defendant property. On September 13, the government seized the real estate, approximately 33 vehicles, and numerous other items of personal property. The appellants are Clement Messino and 11 family members and friends who are claimants to the seized property.[1] Claimant Clement Messino appeals from the decree of forfeiture entered against his property when he became a fugitive, and from the denial of his motion for a hearing or the release of assets to pay attorney's fees. All of the claimants appeal from the district court's denial of their motion to dismiss the complaint.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 After the government seized the defendant property, numerous individuals filed claims of ownership. In November 1991, the claimants filed a motion to dismiss, attacking the sufficiency of the complaint and arguing that the seizure of real property without prior notice and a hearing violated the Due Process Clause of the Fifth Amendment. The claimants also argued that due process required a post-seizure adversary hearing with respect to seized personal property. The motions were not decided until the following summer (the parties dispute the exact date, a matter we discuss below).
 
 
 3
 In December 1991, the government moved for a stay of discovery to protect a pending criminal investigation (the government had not, at that point, filed any criminal charges against any claimants). The district court denied the motion for a general stay, but stayed a pending deposition of a government agent. R. 101.
 
 
 4
 On February 26, 1992, Clement Messino was indicted for drug and weapons violations occurring after August 1991, but allegedly involving some of the defendant property. United States v. Messino, No. 92 CR 69, 1994 WL 6872 (N.D.Ill.). Messino was taken into custody, and later pled guilty. After Messino's indictment, the government moved for a general stay on discovery in the civil proceedings. The district court granted the motion in open court on May 28, 1992, although a minute order to that effect was not entered until June 25. Tr. 5/28/92, at 17; R. 169, 184. The district court renewed the stay by a minute order of August 5, 1992. The stay remains in effect.
 
 
 5
 On March 30, 1992, Messino moved pursuant to United States v. Moya-Gomez, 860 F.2d 706 (7th Cir.1988), cert. denied, 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989), for the district court to conduct an immediate adversary hearing at which the government would be required to prove the likelihood that the seized assets were subject to forfeiture, or to find that Messino had no meaningful assets not under seizure, and to exempt some of the seized property to pay legal fees in both the civil and pending criminal cases.[2] Messino filed an affidavit claiming he had no assets with which to pay counsel in the upcoming criminal case, and alleging that his counsel in the civil case had not been paid for months.
 
 
 6
 At an initial hearing on the motion, the district court considered different theories under which assets could be released, suggesting that Moya-Gomez might require their release or that the district court could release assets that did not appear to be forfeitable. Tr. 5/28/92, at 26-43. In subsequent hearings, the district court indicated that it preferred not to rule on the basis of Moya-Gomez, but rather sought to determine whether some assets could be released by a partial summary judgment. Tr. 6/23/92, at 7-8, 14-15, 22-23. The district court noted that the latter option would allow for payment of attorney's fees in the present action (the civil case), while Moya-Gomez might only allow the release of fees to pay the attorneys in the upcoming criminal case.
 
 
 7
 Messino's counsel requested that the district court rule expressly on the basis of Moya-Gomez. Tr. 6/23/92, at 17-21. However, the district court apparently declined to apply Moya-Gomez, choosing instead to determine whether some assets could be released in an abbreviated summary judgment.[3] At the court's suggestion, Messino filed an affidavit listing seized assets that he did not believe were forfeitable (because, for example, they had not been named in the complaint). The district court permitted the government to respond by showing that it had evidence that the assets were somehow connected to the drug operations. The government responded with an affidavit from Agent Michael Priess.
 
 
 8
 On July 2, 1992, the district court ordered a ring worth about $15,000 released for payment of attorney's fees, but denied the release of any other assets except a 1974 motorcycle to be released in exchange for a $20,000 deposit.[4] R. 173. The district court explained its rationale:
 
 
 9
 First of all, even though I think that these are assets that are not likely to be subject to forfeiture, if it turns out that they are then the court has the Moya-Gomez principle that potentially forfeitable assets might be releasable if they belong to the defendant for attorney's fees.... Now I recognize, and I will state for the record it is possible that [the ring] is forfeitable. In which case the only justification for my ruling would be that forfeitable assets under Moya-Gomez are sometimes usable for attorney's fees.
 
 
 10
 Tr. 7/2/94, at 4, 10. With respect to the other items Messino requested be released, the district court found that the government had established a genuine issue of fact as to Messino's claim of ownership. There was some intimation that the district court expected the assets to pay only costs incurred in Messino's criminal suit, id. at 12, 27, but the district court's order made no further mention of the issue. A final judgment was never entered on the released ring and motorcycle.
 
 
 11
 On July 2, 1992, the day the district court decided the Moya-Gomez issue, Messino fled from federal custody and became a fugitive. Relying upon the fugitive disentitlement doctrine, under which an accused who thwarts the judicial process by becoming a fugitive may not be entitled to seek the benefit of the judicial process in pursuing his claims, see Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), the government moved on July 14 for forfeiture of all of Clement Messino's property. R. 174.
 
 
 12
 The district court granted the motion, ruling that "having become a fugitive, Clement Messino lost his right to contest the forfeiture of his property and his claims filed in this action are hereby stricken." R. 177. On July 16, 1992, the district court entered a final decree of forfeiture of Messino's property, vacated the July 2 order releasing the ring and motorcycle, and struck Messino's claims to the property.
 
 
 13
 On August 11, 1992 the district court denied Messino's motion to modify or set aside the forfeiture decree of July 16. Messino was captured in Florida on August 14. On August 17, Messino moved to set aside the forfeiture decree in light of his return, but the motion was denied on August 19. On September 15, 1992, the claimants filed a notice of appeal seeking review of several orders.
 
 
 14
 In November 1993, Clement Messino and claimants Chris Messino, Paul Messino, and Blaise Messino were charged in a 13-count indictment alleging participation in a cocaine distribution conspiracy from 1980-1991. United States v. Christopher Richard Messino, 865 F.Supp. 511 (N.D.Ill.). The indictment is currently pending in the district court. None of the remaining seven individual claimants are defendants in a criminal case.
 
 
 15
 In the nearly three years between the seizure of assets and our decision in this case, some of the smaller items of personal property have been returned to individual claimants. However, the bulk of seized personal property is still in possession of the government. On March 30, 1994, following the Supreme Court's decision in United States v. James Daniel Good Real Property, --- U.S. ----, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), the government released control of the defendant real property. Throughout the case, claimants Pam Messino and Kathy Powell had been permitted to remain in their residences while paying rent to the government. In May and July 1994 the U.S. Marshals returned some of the rent. However, a lis pendens remains in effect.
 
 
 16
 The claimants appeal from two sets of orders. The first relates solely to Clement Messino: the July 2 order releasing assets to attorneys; the July 16 order rescinding release of assets; the July 16 forfeiture decree; and denial of the August 11 and August 17 motions to set aside the forfeiture decree. Messino and all other claimants also appeal from the denial of their motions to dismiss the complaint.
 
 II. FORFEITURE OF CLEMENT MESSINO'S PROPERTY
 
 17
 Claimant Clement Messino appeals from the July 16, 1992 order striking his claims to the seized property and ordering the property forfeited. Messino also appeals from the district court's denial of his August 11 and August 19 motions to set aside the decree. Since we vacate the district court's July 16 order, we do not need to consider the latter motions.
 
 
 18
 Messino's fugitive status formed the sole basis of the district court's forfeiture decree. R. 177. On appeal, Messino argues that the fugitive disentitlement doctrine should not apply to civil forfeiture cases, or that the district court should have reconsidered its decree when Messino was returned to custody in August. We recently held in United States v. $40,877.59 in United States Currency, 32 F.3d 1151 (7th Cir.1994), decided after oral argument in the present case, that the fugitive disentitlement doctrine is inapplicable to civil forfeiture. Although the facts here do not seem as sympathetic as those in $40,877.59, we believe that the due process concerns which are at the heart of $40,877.59 are equally germane here, and that the cases are indistinguishable. Accordingly, we vacate the district court's forfeiture decree and the order to strike Clement Messino's claims. Since the decision to vacate the July 2 release of the ring and motorcycle was also based on Messino's flight, we also reverse the district court's order vacating the July 2 release of property.
 
 III. RELEASE OF ASSETS TO PAY ATTORNEY'S FEES
 
 19
 Clement Messino also appeals from the July 2 order releasing some assets to pay his attorney's fees. Our inquiry is complicated at the outset by the fact that nobody seems to know the legal basis for the July 2 order we are asked to review. Messino argues that the district court concluded that Moya-Gomez required the release of assets, but that the district court erred by refusing to release sufficient assets. The government is not sure whether the court released assets pursuant to Moya-Gomez or on a summary judgment motion. The parties' confusion is not entirely unwarranted, since the district court--understandably seeking to avoid reaching a constitutional issue never considered by this circuit--did not make explicit the legal basis for its order.[5] If it was a partial summary judgment, then Messino is appealing from the denial of summary judgment as to the other assets, a question clearly entangled in the merits, and thus potentially unreviewable. But the ruling had few of the hallmarks of an order granting or denying summary judgment--the district court refused to characterize it as a summary judgment, stated that the assets released might later prove forfeitable, and never entered a Rule 58 judgment.
 
 
 20
 But neither does the order appear to be an application of Moya-Gomez, which the district court cited as an alternative basis for releasing assets. The district court read Moya-Gomez to mean that "even though certain assets may be properly subject to forfeiture, the right to select your own attorney is so substantial in a criminal situation that we would permit a certain amount to be set aside to be drawn upon pursuant to Court order if there is a proper petition for attorney's fees." Tr. 5/28/92 at 27. But Moya-Gomez does not merely authorize the district court to release assets to pay attorney's fees (the Supreme Court flatly rejected such an interpretation in United States v. Monsanto, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989)); rather, Moya-Gomez held that due process requires the court to hold an adversary hearing before the government may by forfeiture continue to deprive a criminal defendant of assets to pay attorneys in a criminal case. 860 F.2d at 731. Moreover, the district court's release of only those assets deemed unlikely to be forfeited is irrelevant if Moya-Gomez is the basis for release. The district court also placed no apparent restrictions on whether the released assets were to pay Messino's attorney's fees in the civil forfeiture action or in the criminal trial, although earlier the district court had indicated that it did not believe that assets releasable pursuant to Moya-Gomez could pay civil fees. Thus, the most accurate description of the district court's order is that although it released two assets (the government does not cross-appeal, so the propriety of this release is not before us), it otherwise denied Messino's motion that Moya-Gomez required an adversary hearing or the release of sufficient assets to pay attorney's fees. We are thus called upon to review whether Moya-Gomez's requirements are applicable here.
 
 A. Jurisdiction
 
 21
 We first face three jurisdictional questions: whether the July 2 order was mentioned in the notice of appeal; whether it is time-barred; and whether it is a final decision appealable under 28 U.S.C. Sec. 1291.
 
 1. Notice of Appeal
 
 22
 The notice of appeal "shall designate the judgment, order, or part thereof appealed from." Fed.R.App.P. 3(c). Like all rules of procedure, Rule 3(c) must be liberally construed. Torres v. Oakland Scavenger Co., 487 U.S. 312, 316, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988); Foman v. Davis, 371 U.S. 178, 181-82, 83 S.Ct. 227, 229-30, 9 L.Ed.2d 222 (1962). "Thus, when papers are 'technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.' " Smith v. Barry, 502 U.S. 244, ----, 112 S.Ct. 678, 682, 116 L.Ed.2d 678 (1992) (quoting Torres, 487 U.S. at 316-17, 108 S.Ct. at 2408-09); see also Badger Pharmacal, Inc. v. Colgate-Palmolive Co., 1 F.3d 621, 624-25 (7th Cir.1993). The claimants' notice of appeal provided that "claimants appeal from the orders of this court denying claimants' motion to dismiss and otherwise denying any adversary hearing with respect to the plaintiff's seizure of claimants' property, both real and personal, ordering a stay of proceedings and denying claimants' request to set the stay aside and dismissing the claims of Clement Messino." R. 201. The government argues that the July 2 order is not mentioned in the notice. But that order was effectively a "denial of an adversary hearing" since it ruled on Messino's motion for an adversary hearing under Moya-Gomez. Since the notice of appeal adequately conveys Messino's intent to appeal from the court's ruling on his Moya-Gomez motion, it is not defective. See House v. Belford, 956 F.2d 711, 716 (7th Cir.1992).
 
 2. Timeliness
 
 23
 The government argues that even if the notice is proper, the appeal is time-barred. Since the United States is a party in the case, the claimants had 60 days to file a notice of appeal. Fed.R.App.P. 4(a). The court decided the Moya-Gomez motion on July 2; a notice of appeal was filed September 15. If Messino were appealing only from the July 2 ruling, his appeal might be too late. People Who Care v. Rockford Board of Educ. Dist. 205, 921 F.2d 132, 135 (7th Cir.1991). But Messino did not lose his appeal by waiting until the final judgment of forfeiture of July 16. "Many orders during the course of a case might be sufficiently independent to be deemed 'final decisions' under 28 U.S.C. Sec. 1291, immediately appealable under the collateral order doctrine. Although a party has a right to take an immediate appeal, there is no obligation to do so." Exchange Natl. Bank of Chicago v. Daniels, 763 F.2d 286, 291 (7th Cir.1985); cf. 15A Charles Alan Wright, Arthur Miller, and Edward Cooper, Federal Practice and Procedure (1992) Sec. 3911 ("Any rule that requires forfeiture of appellate opportunities for guessing wrong about doctrines of appealability that often are obscure would greatly increase the costs of collateral order doctrine by forcing protective appeals"). Thus the time for appeal from the July 2 order began to run on July 16, the date of entry of the final judgment from which Messino also appeals, and the appeal was timely.
 
 3. Finality
 
 24
 The July 2 order by no means terminates the litigation, the usual prerequisite to appellate jurisdiction. Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633-34, 89 L.Ed. 911 (1945). Perhaps the wisest course of action would have been for the parties to request that the district court certify its order for appeal under 28 U.S.C. Sec. 1292(b). See, e.g., United States v. Unit 7 and Unit 8 of Shop in the Grove Condominiums, 853 F.2d 1445 (8th Cir.1988), vacated on other grounds, 890 F.2d 82 (8th Cir.1989) (en banc). That subsection provides that a district court may certify an order for interlocutory appeal when it "shall be of the opinion that such an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." See People Who Care, 921 F.2d at 134; Weir v. Propst, 915 F.2d 283, 285 (7th Cir.1990) (Sec. 1292(b) certification available even if order is otherwise appealable as collateral order under Sec. 1291). But the parties did not, so our jurisdiction must be rooted elsewhere.
 
 
 25
 The criminal drug forfeiture statute authorizes the district court to enter "a restraining order or injunction" pending trial. 21 U.S.C. Sec. 853(e)(1)(A). In criminal forfeiture, courts have reviewed appeals seeking release of frozen assets to pay attorneys under 28 U.S.C. Sec. 1292(a)(1), which allows interlocutory appeals from orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." See United States v. Floyd, 992 F.2d 498, 500 (5th Cir.1993); United States v. Roth, 912 F.2d 1131, 1132-33 (9th Cir.1990); United States v. Kramer, 912 F.2d 1257, 1259 (11th Cir.1990) (RICO); United States v. Monsanto, 836 F.2d 74, 82-85 (2d Cir.1987), vacated on other grounds, 852 F.2d 1400 (2d Cir.1988); see also United States v. Crozier, 777 F.2d 1376 (9th Cir.1985) (pretrial restraints in criminal forfeiture treated as injunctions for procedural purposes). But the injunction analysis seems inapt in the civil forfeiture context, in which property is seized by an arrest warrant against the property rather than an injunction against the owner (although in practical terms, of course, it makes little difference whether property is seized by an injunction in a criminal--in personam--proceeding or arrest in a civil--in rem--forfeiture). All civil forfeiture seizures would be reviewable in the first instance if seen as injunctions. But see United States v. Statewide Auto Parts, 971 F.2d 896 (2d Cir.1992) (reviewing restraining order in civil case under 28 U.S.C. Sec. 1292(a)(1)).
 
 
 26
 The collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) provides a closer fit. That doctrine allows review under 28 U.S.C. Sec. 1291 of certain otherwise non-final orders if the order conclusively determines a disputed question that is completely separate from the merits of the action and is effectively unreviewable on appeal from the final judgment. Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); Cohen, 337 U.S. at 548, 69 S.Ct. at 1226-27; Palmer v. City of Chicago, 806 F.2d 1316, 1318 (7th Cir.1986), cert. denied, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987). We find that the Cohen criteria are met here, a view shared by several courts that have reviewed similar orders. See United States v. 8 Princess Court, Holmdel, 970 F.2d 1156, 1159 (2d Cir.1992) (motion to release property seized under Sec. 881 reviewed as collateral order); In re Newport Savings and Loan Association, 928 F.2d 472, 474 (1st Cir.1991) (same); Unit No. 7, 853 F.2d at 1448 (same); United States v. Spilotro, 680 F.2d 612 (9th Cir.1982) (same); accord United States v. Spiegel, 995 F.2d 138, 140 (9th Cir.1993) (release of frozen assets to pay attorneys in related criminal action reviewable as collateral order); see also United States v. Henderson, 844 F.2d 685 (9th Cir.1988) (government appeals release of assets as a collateral order).
 
 
 27
 First, the district court's order conclusively determines that the defendant is not entitled to an adversary hearing or to the release of sufficient assets to pay attorney's fees--an issue collateral to the ultimate question whether the property was related to drug money. The district court clouded the question of separability by engaging in a summary judgment analysis as to certain assets, but the question whether Moya-Gomez requires further process is separate from the question of forfeitability. Accord United States v. Consiglio, 866 F.2d 310 (9th Cir.1989); cf. 15A Wright, Miller & Cooper Sec. 3911.2 at 381.
 
 
 28
 But most significantly, the district court's order is effectively unreviewable on appeal from a final judgment. "Effectively unreviewable" means something more than that hardship will result from delay or that the course of the litigation will be changed without an appeal. Digital Equipment Corp. v. Desktop Direct, Inc., --- U.S. ----, ----, 114 S.Ct. 1992, 1998, 128 L.Ed.2d 842 (1994). Thus, neither restrictions on the rights of intervening parties, Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987), nor rulings on motions to disqualify counsel, Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981); Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), are appealable as collateral orders since sufficient relief can be had on appeal from a final judgment. See also Digital Equipment, --- U.S. at ---- - ----, 114 S.Ct. at 1997-98.
 
 
 29
 The government argues that the superficially analogous rule from Firestone and Flanagan--that rulings on motions to disqualify counsel are not collateral orders--precludes review here. At least one other court, reviewing an appeal identical to the one here, agreed, concluding in one sentence that appeals involving the Sixth Amendment right to counsel fail the third prong of the collateral order test. Consiglio, 866 F.2d at 311.
 
 
 30
 But such a cursory glance at the substance of the order appealed from ignores the barriers to effective review imposed by the procedural tangle of parallel criminal and civil forfeiture proceedings. Suppose we refuse to review Messino's request for a hearing that might result in the release of fees to pay attorneys in his related criminal case. With the assets frozen and the civil proceeding stayed, the criminal trial would go forward. Depending upon the case, if the government obtained a conviction, it might forfeit the assets through criminal forfeiture or continue with the civil forfeiture trial. Before which court, and after which trial, would Messino bring his appeal on this issue? After a criminal trial, the district court deciding the civil forfeiture case could offer no meaningful relief; but obviously, the question of release of assets could not be entertained on appeal from a criminal conviction, since the issue was never part of the criminal case. These procedural problems alone, apart from the question whether the denial of a hearing and release of attorney's fees can be effectively reviewed on appeal, lead us to conclude that review must be had at once if it is to be had at all. Accordingly, the district court's order was a collateral order and we have jurisdiction under 28 U.S.C. Sec. 1291.
 
 B. Merits
 1. Moya-Gomez Revisited
 
 31
 We turn to the question whether the district court properly denied Messino's motion for an adversary hearing or, alternatively, for the release and exemption of certain assets from forfeiture to pay his attorneys--the so-called "Moya-Gomez" motion.[6] In Moya-Gomez, we considered a very similar issue in the context of criminal forfeiture, 21 U.S.C. Sec. 853. Menelao Orlando Estevez and other defendants were charged with narcotics violations, and their property alleged to be forfeitable. 860 F.2d at 715. On the government's motion, the district court entered an ex parte restraining order freezing the defendants' assets pursuant to 21 U.S.C. Sec. 853(e)(1)(A). Orlando moved for a modification of the restraining order to allow him to retain counsel, or for a prompt adversary hearing wherein the government would have to prove the likelihood of a conviction and forfeiture. Id. at 716. The district court released some, but not all, of the assets. Orlando claimed these were insufficient, and that the restraint of assets violated his Fifth and Sixth Amendment rights. Id. at 719.
 
 
 32
 On appeal, we recognized that while under the Sixth Amendment "a criminal defendant has a qualified right to retain counsel of his own choosing to conduct his defense in a criminal case," neither a restraining order seizing all assets available for attorney's fees nor a criminal forfeiture violated the Sixth Amendment.[7] Id. at 724-25. A year later, the Supreme Court reached the same conclusion in Monsanto, 491 U.S. 600, 109 S.Ct. 2657, and Caplin & Drysdale v. United States, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).
 
 
 33
 Moya-Gomez also considered Orlando's claim that the issuance of a restraining order under Sec. 853 without holding an immediate post-restraint hearing deprived him of due process. Applying the analysis of Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), we recognized that although Orlando had no absolute right to retain counsel of choice, he nonetheless had a significant interest in choosing his own counsel, and in doing so immediately. Id. 860 F.2d at 726. Second, we noted that allowing continued restraint of assets solely on the basis of an ex parte motion was likely to deprive the defendant of his interest, and also presented an opportunity for abuse by the government by permitting "the government, on the basis of an ex parte application ... to affect significantly the ability of the defendant to participate in the adversary process of the criminal trial." Id. at 728. Lastly, we considered the government's interest and the burden that additional procedures would entail. The legislative history showed that Congress did not intend that the government be required to put forward proof of the validity of the indictment prior to trial. Id. at 729. But weighing all of the factors, we concluded that "the interest of the defendant in utilizing the funds in order to conduct a defense, coupled with the unchecked possibility of prosecutorial abuse, outweigh the articulated need for this extraordinary power by the government." Id. at 730.
 
 We therefore held:
 
 34
 the pretrial, postindictment restraint of a defendant's assets without affording the defendant an immediate, postrestraint adversary hearing at which the government is required to prove the likelihood that the restrained assets are subject to forfeiture violates the due process clause to the extent that it actually impinges on the defendant's qualified right to counsel of choice. If the government seeks to restrain a defendant's assets without subjecting itself to a due process hearing of the type described above, and if the district court finds that the defendant has no other assets with which to hire his attorney of choice, then the government must consent to the exemption of reasonable attorney's fees, as determined by the district court in its supervisory role, from the property otherwise subject to forfeiture.
 
 
 35
 Id. at 731.
 
 
 36
 In Monsanto, the Supreme Court expressly left open the Fifth Amendment question addressed in Moya-Gomez:
 
 
 37
 We do not consider today, however, whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed.... In its initial consideration of this case, a panel of the Second Circuit ordered that such a hearing be held before permitting the entry of a restraining order; on remand, the District Court held an extensive, 4-day hearing on the question of probable cause.
 
 
 38
 Though the United States petitioned for review of the Second Circuit's holding that such a hearing was required ... given that the Government prevailed in the District Court notwithstanding the hearing, it would be pointless for us now to consider whether a hearing was required by the Due Process Clause.
 
 
 39
 Monsanto, 491 U.S. at 615 n. 10, 109 S.Ct. at 2666 n. 10.
 
 
 40
 On remand, the Second Circuit addressed the due process question. Monsanto IV, 924 F.2d 1186 (2d Cir.) (en banc), cert. denied, --- U.S. ----, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991).[8] In Monsanto IV, the court held that due process requires an adversary postrestraint, pre-trial hearing in order for the government in a criminal forfeiture case to continue to restrain assets needed to retain counsel of choice. 924 F.2d at 1203. Interestingly, the government conceded that a hearing was required; the only dispute was over the nature of the hearing. Id. at 1196. The court held that at the post-restraint hearing, the government need only establish probable cause as to the defendant's guilt and the forfeitability of the seized assets, and the rules of evidence would not apply. Id. at 1195-98; see Monsanto, 491 U.S. at 614-16, 109 S.Ct. at 2666-67.[9]
 
 
 41
 Clearly Moya-Gomez has lost none of its vitality after the Supreme Court decisions in Caplin and Monsanto; rather, it is joined by Monsanto IV (in which the government conceded that a hearing was required). Several other courts agree that due process requires a hearing when assets are seized in this context through criminal forfeiture. See Crozier, 777 F.2d at 1383-84; United States v. Lewis, 759 F.2d 1316, 1324-25 (8th Cir.), cert. denied, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985); United States v. Long, 654 F.2d 911, 915-16 (3rd Cir.1981); but see United States v. Bissell, 866 F.2d 1343, 1354 (11th Cir.), cert. denied, 493 U.S. 876, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989) (defendants did not request a hearing, and no hearing required); see also United States v. Nichols, 841 F.2d 1485, 1491 n. 4 (10th Cir.1988) (open question); United States v. Noriega, 746 F.Supp. 1541, 1545 & n. 2 (S.D.Fla.1990) (due process limitations on asset freeze). A less settled question, however, is the applicability of this analysis to civil forfeiture.
 
 2. Civil Forfeiture
 
 42
 Messino argues that the procedural rights set out in Moya-Gomez apply equally in civil forfeiture cases. However, it is somewhat misleading to consider whether Moya-Gomez "applies" to civil forfeiture: although civil and criminal forfeiture may have the same practical effects, they have distinct procedural guarantees and burdens of proof, stemming for the most part from adherence to the fiction that civil forfeiture is an in rem proceeding against guilty property rather than a penalty. For example, civil discovery is more extensive than criminal, and a civil case may provide more opportunities for a claimant to challenge the complaint. Moreover, the government's burden of proof in civil forfeiture (probable cause that the property was acquired by drug money, 19 U.S.C. Sec. 1615[10]) is far lighter than in a criminal case (where the government must prove the drug offense beyond a reasonable doubt, and that the property is forfeitable by a preponderance of the evidence).[11] At the same time, civil forfeiture claimants usually have been unable to avail themselves of the constitutional guarantees afforded to criminal defendants. But see Austin v. United States, --- U.S. ----, ---- - ----, 113 S.Ct. 2801, 2806-12, 125 L.Ed.2d 488 (1993) (Eighth Amendment applies to civil forfeiture); United States v. Torres, 28 F.3d 1463 (7th Cir.1994) (double jeopardy applies to civil forfeiture). Speedy trial concerns mean that a criminal forfeiture action must be concluded swiftly, while a civil proceeding may drag out for years. The use of parallel proceedings--a civil forfeiture to restrain assets and obtain discovery, followed by a criminal indictment that stays the civil case, 21 U.S.C. Sec. 881(i)--sometimes sets these two regimes on a collision course. When that occurs, as here, we cannot simply graft procedures developed in one context onto the procedurally distinct landscape of the other.
 
 
 43
 We therefore must consider in the first instance--although Moya-Gomez guides our decision to some extent--whether due process requires that a civil forfeiture claimant receive a hearing when the government seeks to continue its seizure of assets the claimant needs to pay attorney's fees.[12] Although we are not the first court to consider this question, see United States v. All Funds on Deposit, 767 F.Supp. 36 (E.D.N.Y.1991) (holding that due process requires a hearing before Sec. 881 deprivation of assets needed to pay criminal defense attorneys), the courts of appeals that have considered the issue have, for various reasons, left no lasting imprint. United States v. $876,915, 874 F.2d 104 (2d Cir.1989) (holding that a post-seizure hearing is required if assets to pay attorney's fees are at issue, but insisting that the "opinion be given no precedential effect"); see Unit No. 7, 890 F.2d at 85-87 (Arnold, J., dissenting) (arguing that issue was properly before court); Nichols, 841 F.2d at 1491 (apparently considered in the district court but not at issue on appeal).
 
 
 44
 Due process requires that a person not be deprived of property without notice and an opportunity for a hearing. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The seizure of assets pursuant to 21 U.S.C. Sec. 881 constitutes a deprivation of property in the constitutional sense. Moya-Gomez, 860 F.2d at 725-26. While the government's title vests in the property upon commission of the crime, 21 U.S.C. Sec. 881(h), the seizure nonetheless removes from the defendant's control the assets he needs to pay his attorneys. "The temporary, nonfinal deprivation is, in that respect, effectively a permanent one." Monsanto IV, 924 F.2d at 1193. To determine what process must accompany this deprivation, we balance three factors: the private interest that will be affected by the official action; the risk of an erroneous deprivation of the interest through the procedures used and the probable value of substitute procedural safeguards; and the Government's interest, including the additional burden the additional requirements would pose. Mathews v. Eldridge, 424 U.S. at 335, 96 S.Ct. at 903; Goldberg v. Kelly, 397 U.S. 254, 263-71, 90 S.Ct. 1011, 1017-22, 25 L.Ed.2d 287 (1970).
 
 
 45
 a. Private interest affected by official action
 
 
 46
 Messino seeks release of funds to pay attorneys in both his civil and criminal proceedings. With respect to the release of assets to pay criminal defense counsel, the case is indistinguishable from Moya-Gomez or Monsanto IV. A criminal defendant whose assets are seized pursuant to civil forfeiture, based on the same illegal activities underlying the criminal action, is in the same position as a criminal defendant whose assets are seized pursuant to criminal forfeiture. "Under both scenarios, the Government's seizure of all assets implicates the Fifth and Sixth Amendment rights of the defendant-claimant, when that person claims that the seizure is improperly denying him access to private counsel." All Funds on Deposit, 767 F.Supp. at 42.
 
 
 47
 In Moya-Gomez we discussed at length the nature of a defendant's Sixth Amendment right to counsel of choice, and the same reasoning applies here. 860 F.2d at 723-26; see also Monsanto IV, 924 F.2d at 1193-94. While pretrial restraint of assets needed to pay counsel does not deprive a criminal defendant of this qualified right, Caplin & Drysdale, 491 U.S. at 651-55, 109 S.Ct. at 2675-76, a criminal defendant nonetheless retains a strong interest in obtaining counsel, and most importantly, in obtaining counsel immediately. Moya-Gomez, 860 F.2d at 727. The private interest at stake "is not merely a defendant's wish to use his property in whatever manner he sees fit. Here, that interest is augmented by an important liberty interest: the qualified right, under the Sixth Amendment, to obtain counsel of choice." Monsanto IV, 924 F.2d at 1193. We conclude that a criminal defendant's interest in obtaining counsel is weighty indeed.
 
 
 48
 But Messino's interest in obtaining counsel of his choice to prosecute his civil action rests on much thinner ground. A right to counsel of choice is derived from a right to counsel, Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932), which the Sixth Amendment expressly extends only to criminal defendants. ("In all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defense.") Messino argues that after Austin, which recognized that some criminal protections may apply to civil proceedings if they are "so punitive that the proceedings must reasonably be considered criminal," --- U.S. at ----, 113 S.Ct. at 2804, civil forfeiture is indistinguishable from a criminal action. See also United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); United States v. On Leong Chinese Merchants Ass'n Bldg., 918 F.2d 1289, 1298 (7th Cir.1990) (Cudahy, J., concurring), cert. denied, --- U.S. ----, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991). But while Austin may have tempered the talismanic invocation of the distinction between criminal and civil proceedings, it is not a wholesale incorporation of criminal procedure into civil forfeiture. The Austin Court specifically contrasted the Eighth Amendment, which is not limited to criminal cases, with the Sixth Amendment, which is so limited. Id. --- U.S. at ---- - ---- & n. 4, 113 S.Ct. at 2804-05 & n. 4; see also Torres, 28 F.3d 1463. As we noted in United States v. 7108 West Grand Avenue, 15 F.3d 632, 635 (7th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 2691, 129 L.Ed.2d 822 (1994) (dicta), the Court has yet to deem forfeiture "criminal" for Sixth Amendment purposes.
 
 
 49
 Of course, as Moya-Gomez made clear, a claimant need not have an absolute Sixth Amendment right to have a significant interest in the property. A civil forfeiture claimant might argue that even though the Sixth Amendment does not apply to civil cases, the Fifth Amendment's Due Process Clause requires appointment of counsel--or, as a corollary, an opportunity to retain counsel. See Lassiter v. Dept. of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). But these cases only underscore that, for due process purposes, deprivations of liberty received different protections than deprivations of other rights. Id.; see also Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Parham v. J.R., 442 U.S. 584, 604-09, 99 S.Ct. 2493, 2505-08, 61 L.Ed.2d 101 (1979). Accordingly, we find that a civil forfeiture claimant's interest is significantly diminished when he seeks assets to pay attorneys in the civil forfeiture action as opposed to a related criminal action.
 
 
 50
 b. Risk of erroneous deprivation and the value of procedural alternatives
 
 
 51
 We turn to the second factor of Mathews--the risk of an erroneous deprivation of a defendant's counsel of choice through the procedures used and the probable value of procedural alternatives. Here, Moya-Gomez cannot be the end of the inquiry, since criminal and civil forfeiture have significantly different procedural protections and limitations. Criminal forfeiture is commenced upon filing of an indictment, which of course emerges from a non-adversarial process. The indictment alone provides the government with sufficient cause to obtain a restraining order under 21 U.S.C. Sec. 853(e)(1)(A).[13] In Moya-Gomez, we found that the absence of an adversary hearing at any point in these pre-trial proceedings created a significant risk of erroneous deprivation. 860 F.2d at 726-27.
 
 
 52
 By contrast, a civil forfeiture action is commenced with the filing of a complaint, supported by an affidavit setting forth facts which provide probable cause to believe that the property is subject to forfeiture. United States v. 6250 Ledge Road, 943 F.2d 721, 725 (7th Cir.1991). A judge must find probable cause to issue a warrant for the seizure of the property. Significantly, establishing probable cause is the extent of the government's burden. Id. Once the government has met this burden, a claimant seeking return of the property must file a claim and prove by a preponderance of the evidence that the property is not subject to forfeiture. 19 U.S.C. Sec. 1615; On Leong Chinese Merchants, 918 F.2d at 1292.
 
 
 53
 The government thus contends that civil forfeiture already incorporates procedural safeguards absent in the criminal context, and therefore civil forfeiture poses a lesser risk of an erroneous deprivation of property. The initial ex parte finding of probable cause, and the possibility of eventual summary judgment, argues the government, afford all the process that is due.
 
 
 54
 But the government places too much weight on these substantively slender distinctions. The crucial defect of the criminal forfeiture scheme was its failure to provide for an adversary hearing after seizure of the assets. Moya-Gomez, 860 F.2d at 726. "The inherent risk in allowing the deprivation of a property interest through ex parte proceedings accounts for the general rule that a prior adversary hearing is required, absent special circumstances.... It follows that there is a substantial risk of an erroneous deprivation of a defendant's significant property interest in the absence of an opportunity to be heard after the ex parte entry of a restraining order." Monsanto IV, 924 F.2d at 1195. An ex parte determination of probable cause, whether made by a grand jury or a judge, does not address the concern that ex parte proceedings pose a substantial risk of error. The observation we made in Moya-Gomez is equally true in civil forfeitures affecting assets for criminal trials, notwithstanding the judicial ex parte finding of probable cause: "the statutory scheme [absent an adversary hearing] does present a great opportunity for abuse by the prosecutorial arm of the government. It permits the government, on the basis of an ex parte application to a grand jury--not a judicial officer--to affect significantly the ability of the defendant to participate in the adversary process of the criminal trial. We, of course, do not presume that those charged with the high responsibility of representing the government of the United States would indulge in such a perversion of the criminal process. However the constitutional validity of a statutory scheme cannot turn on such an expectation. The adversary process is the basic framework of the American criminal justice system.... If one party can skew the process to its advantage, the integrity of the entire process is harmed." 860 F.2d at 728-29. "A fundamental requirement of due process is the opportunity to be heard," Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914); an ex parte proceeding necessarily fails to provide such an opportunity.
 
 
 55
 Moreover, the possibility of an adversary hearing at summary judgment or at the trial does not entirely reduce the risk that a defendant's assets will be improperly seized. True, it is an opportunity to be heard, but "the opportunity to be heard must be afforded at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Summary judgment may be a long time coming, particularly where, as here, parallel civil and criminal proceedings require the civil case to be stayed pending the criminal trial. An "opportunity to be heard" after the criminal trial is useless; "the defendant needs the attorney now if it is to do him any good." Moya-Gomez, 860 F.2d at 726-27.
 
 
 56
 But we must also evaluate whether additional procedures would be valuable. In criminal forfeiture, we found that a post-deprivation adversary hearing on the government's probable cause to retain seized assets would have considerable value in protecting against an erroneous forfeiture. Monsanto IV, 924 F.2d at 1195; Moya-Gomez, 860 F.2d at 728. In a criminal case, such a hearing would be the first occasion on which a judge (rather than the grand jury) would examine the government's factual basis for forfeiture. In civil forfeiture, by contrast, a post-restraint hearing arguably might have less significance. Since the government is required to show probable cause to seize the property in the first instance, its "showing" at a post-restraint hearing might consist only of the affidavit it submitted to obtain the ex parte finding of probable cause. The claimant, of course, must bear the burden of proving the absence of probable cause; any other allocation of proof is prohibited by the statute. Cf. Monsanto, 491 U.S. at 615-16, 109 S.Ct. at 2666-67 (in criminal post-restraint hearing government need only show probable cause as to defendant's guilt and forfeitability of assets). Moreover, when there has been no discovery--and more importantly, when a stay prevents any discovery--it is questionable whether a post-restraint hearing could meaningfully be considered "adversary."
 
 
 57
 But even given the potentially limited nature of such a post-restraint hearing, we still find that it would afford a defendant an important opportunity to be heard before his assets to pay attorneys are, in effect, permanently seized. To be timely, a hearing would have to be conducted (at least) just after a criminal indictment has been filed. At a hearing, the defendant could rebut the government's showing of probable cause--for example, by proof of innocent ownership, or that a government informant is unreliable, or that the property had no connection to drugs. We find that a timely airing of the defendant's claims--and, importantly, at which the government is not required to produce any evidence beyond that which is necessary to establish probable cause--is a necessary safeguard against the unfortunate possibility that the government could erroneously seize a defendant's assets through civil forfeiture so as to render him unable to mount a sufficient criminal defense.
 
 
 58
 Of course, when a criminal indictment is handed down, the government can upon good cause move to stay the civil proceedings. 21 U.S.C. Sec. 881(i). A defendant then will be unable to conduct discovery before a hearing, and will be severely disadvantaged trying to disprove the government's case. But Congress has set up this parallel scheme that effectively gives the government the upper hand; it may well be that an indiscriminately broad stay on discovery, while authorized by the statute, might at some point deprive a defendant of a meaningful opportunity to be heard (a more difficult argument to make after United States v. $8,850 in United States Currency, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983)). Nonetheless, the prospect of limited discovery alone does not eviscerate the potential value of an adversary hearing. Ex parte determinations and untimely civil trials do not adequately protect against the possibility that a defendant could be wrongly deprived of assets to pay criminal defense attorneys. An adversary post-restraint hearing at which the defendant can challenge the government's bases for probable cause, while no panacea, would lessen the risk.
 
 
 59
 c. The government's interest
 
 
 60
 When it amended the civil forfeiture statutes in 1984 to allow forfeiture of real property, Congress decided that "the traditional criminal sanctions of fine and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs." S.Rep. No. 98-225, p. 191 (1983). Moreover, Congress clearly intended that the government be permitted to seize and forfeit property merely upon a showing of probable cause that the property is drug-related. 21 U.S.C. Sec. 881(b)(4). Obviously, the government could not be required to meet any higher burden of proof at a post-restraint hearing. Cf. Monsanto IV, 924 F.2d at 1203 (Oakes, J., dissenting) (arguing that Sec. 853 cannot be interpreted to allow a post-restraint hearing and therefore is unconstitutional). But a post-restraint adversary hearing at which the defendant bears the burden of proof, and may challenge the government's bases for probable cause, interferes with none of these interests. And although attending a hearing and possibly being required to bring forth additional evidence in order to prove probable cause may impose some administrative burden on the government, such a requirement certainly does not conflict with any of the policies expressed in the civil forfeiture statute.
 
 
 61
 d. Conclusion
 
 
 62
 Considering all of the Mathews factors discussed above, it is our view that due process requires the government to participate in a post-seizure adversary hearing on probable cause when the district court has found that the government has seized through civil forfeiture all of the assets a criminal defendant needs to obtain counsel. The criminal defendant whose assets have been seized via civil forfeiture is deprived of a significant interest just as if the assets were restrained pursuant to criminal forfeiture. And although civil forfeiture may already have some procedural guarantees absent in criminal forfeiture, these procedures alone do not sufficiently diminish the risk of erroneous deprivation that accompanies exclusive reliance on ex parte or potentially untimely procedures.
 
 
 63
 Should the defendant rebut the government's showing of probable cause, the government may introduce more evidence to bolster its case. However, if the defendant successfully rebuts the government's showing of probable cause and the government cannot or chooses not to bring forth additional evidence, due process requires that sufficient assets be released to remedy the deprivation of assets needed to pay a defense attorney's reasonable fees. See Moya-Gomez, 860 F.2d at 730.[14]
 
 
 64
 We are aware that the prompt adversary hearing we describe here may be somewhat limited. This is only partially due to the very low burdens placed on the government by 21 U.S.C. Sec. 881. More of the constitutional difficulty arises from the complex interplay between civil forfeiture and criminal prosecution: the use of civil forfeiture to restrain assets needed in a criminal defense; the availability of relief on appeal from a civil forfeiture action when the harm manifests itself in the criminal trial; and the capacity of the government to render its civil seizure of assets unreviewable through use of discovery stays. These tangles are, of course, among the least of the problems posed by parallel criminal and civil proceedings--equally complicated are the inherent tensions between the purposes of civil discovery and the defendant's privilege against self-incrimination, or the potential for abuse of discovery (on both sides) by using discovery obtained in one proceeding in the other.
 
 
 65
 Although the district court considered some of Messino's arguments as to certain assets, it cannot fairly be said to have conducted a hearing along the lines that we have suggested. Moreover, as the government argues, it does not appear that the district court made the threshold determination that Messino did not have sufficient assets to pay defense counsel but for the seized assets. We remand to the district court to determine whether the government has seized the only funds available to pay Messino's criminal defense attorney's fees. If the district court concludes this is the case, then it should allow Messino to challenge the government's affidavit setting forth probable cause that the assets are forfeitable. The stay on discovery in this case may limit Messino's ability to challenge the probable cause determination (although now that a criminal indictment has been filed, it is possible that Messino has conducted some criminal discovery and gleaned information about his case). We recognize that this raises serious concerns, and that a blanket stay on a case cannot be used to defeat the opportunity for a meaningful hearing; however, the effect of the discovery stay is not before us.[15]
 
 IV. MOTIONS TO DISMISS
 
 66
 The claimants also appeal from the district court's denial of their motions to dismiss the complaint. In their motions to dismiss, claimants argued that due process required that they be afforded notice and a hearing before seizure of real property and after the seizure of personal property. Failure to comply with these requirements, they argued, required dismissal of the complaint.
 
 
 67
 After the claimants' had filed their appellate brief, the Supreme Court decided their first claim by rendering a decision in the closely analogous case of United States v. James Daniel Good Real Property, --- U.S. ----, 114 S.Ct. 492, 126 L.Ed.2d 490, holding that due process requires notice and a hearing before the seizure of real property. Following James Daniel Good, the government stopped collecting rent on the defendant property and returned the rent paid. James Daniel Good did not, however, address the remedy for violation; the claimants argue that the complaint must be dismissed.
 
 
 68
 As with Messino's appeal on the Moya-Gomez motion, this appeal raises obvious jurisdictional questions. Ordinarily, of course, a denial of a motion to dismiss is not a final order. However, the claimants contend that we can review the district court's denial of their motions as a collateral order or as an interlocutory appeal from an injunction, 28 U.S.C. Sec. 1291(a)(1). With respect to all claimants but Messino, we do not even need to reach this question, because their appeal is untimely under either theory. The time period for appeal (60 days) begins to run on the day the order appealed from is entered, Exchange Nat'l Bank, 763 F.2d at 289; Financial Services Corp. v. Weindruch, 764 F.2d 197 (7th Cir.1985); the claimants filed their notice on September 15, 1992. But Messino, whose claims resulted in a final judgment of forfeiture when he became a fugitive, might be able to appeal the denial along with his appeal from a final judgment. His claims are addressed below.
 
 
 69
 The government argues that the clock began to tick on May 28, 1992, when (according to the government) the motions to dismiss were denied in open court. On that day, the district court stated only that:
 
 
 70
 I am inclined to deny all motions to dismiss, certainly your client's motion to dismiss [referring to claimant not on appeal]; because I think in their affidavit--it's just a threshold motion. When I look at the facts alleged by the government, I think that would give them a claim under the forfeiture provisions of the law.
 
 
 71
 So rather than go on perpetuating that, we have studied each of the motions and each of the claims and compared it pretty meticulously with the affidavit. And certainly accepting as true all the allegations made by the government, which I have to do for purposes of the motion to dismiss, what I am inclined to do is deny the motions to dismiss. And we will produce an order to that effect.
 
 
 72
 Tr. 5/28/92, at 16. This is far too speculative to be considered an order. A statement that the district court is "inclined" to deny a motion cannot be considered a definitive judgment, especially when the district court states that an order (not merely a memorandum opinion) is forthcoming. Moreover, the minute order of May 28, 1992 indicated that no action had been taken: it read "Status hearing held and continued on June 12, 1992, at 9:00 a.m. in courtroom # 1801. Rulings on all pending motions are continued generally." R. 153.
 
 
 73
 On June 25, 1992, the district court entered a minute order that read in its entirety:
 
 
 74
 Claimants' motions to dismiss [65, 92 & 124] are denied. Plaintiff's oral motion for a stay is denied.
 
 
 75
 R. 169. On August 5, 1992, the district court entered its memorandum opinion and order denying the motions to dismiss. R. 187. The district court issued two minute orders on August 5: the first amended a clerical error in the June 25 order, R. 184, and the second read:
 
 
 76
 Enter Memorandum, Opinion, and Order denying claimant's motions to dismiss [65-1, 92-1, and 124-1] and granting the government's renewed motion to stay proceedings.
 
 
 77
 R. 188.
 
 
 78
 The government argues that at the latest, the time for appeal began upon entry of the June 25 order; the claimants argue that it began upon entry of the orders of August 5. The claimants first attempt to explain away the June 25 order by claiming that it was "ambiguous," and that they did not know which of the three pending motions to dismiss the order denied. But the June 25 order specifically references the three denied motions by their docket numbers: "65" is the claimants' motion to dismiss, "92" is a different claimants' motion to dismiss, and "124" is Clement Messino's motion to dismiss. It was abundantly clear that all motions to dismiss were denied.
 
 
 79
 The claimants also contend that the June 25 order was "ambiguous" because of the reference to the denial of a motion for a stay. This was an error; the district court had in fact granted an oral motion for a stay in open court on May 28, 1992. In its first minute order of August 5, 1992, the district court amended the minute order to read that the motion for a stay had been granted. R. 184. But this clerical error has no bearing on the issue of whether the June 25 order clearly denied the motions to dismiss.
 
 
 80
 Unable to raise any meritorious argument that the June 25 order was not an order of dismissal, the claimants argue that the June 25 order was in effect superseded by the August 5 minute orders. The first minute order amending the error in the June 25 order was merely a technical change, and did not re-start the time for appeal. Exchange Nat'l Bank, 763 F.2d at 289. And the second order did not "amend" the June 25 order in any respect--it merely indicated that the district court had entered its "Memorandum Opinion and Order." "Unless the second order 'has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality,' the first order controls for the time of appeal." Id. (quoting FTC v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 211-12, 73 S.Ct. 245, 249, 97 L.Ed. 245 (1952)). Since we conclude that the order denying the claimants' motion to dismiss was entered on June 25, 1992, the Notice of Appeal was untimely. We therefore lack appellate jurisdiction to review the district court's denial of the claimants' motions to dismiss. See Parker-Chapley Constructions Co. v. Cherrington, 865 F.2d 907, 909 (7th Cir.1989) (time limits are jurisdictional).
 
 
 81
 Messino joined the other claimants' motion to dismiss and also filed his own motion. All of these were dismissed on June 25. But on July 16, the district court entered a final judgment on Messino's claims. For the same reasons that his appeal from the July 2 order was timely, his appeal from the denial of the motion to dismiss can be appealed along with his appeal from a final judgment.
 
 
 82
 But even so, we lack appellate jurisdiction. Messino argues that the order is appealable either as a collateral order or as an appeal from an injunction, 28 U.S.C. Sec. 1292(a)(1). But the denial of the motion to dismiss cannot be considered a collateral order, because it is effectively reviewable on appeal. See Cohen, 337 U.S. at 481, 69 S.Ct. at 1339. Messino's motion claimed that due process entitled him to a pre-deprivation hearing upon seizure of real property, and a post-deprivation hearing upon seizure of personal property. But as James Daniel Good illustrates, such deprivations of property, whether constitutional or not, can be reviewed on appeal. The Supreme Court recently underscored that hardship from delay will not alone bring an order within the collateral order doctrine: "A fully litigated case can no more be untried than the law's proverbial bell be unrung, and almost every pretrial or trial order might be called 'effectively unreviewable' in the sense that relief from error can never extend to rewriting history." Digital Equipment, --- U.S. at ----, 114 S.Ct. at 1998.
 
 
 83
 Messino's attempts to characterize the denial of a motion to dismiss as an injunction likewise fail. It is difficult to understand how a denial of a hearing can be seen as an injunction, since it neither requires nor forbids Messino from taking any particular action. The only action that could possibly be characterized as an injunction is the district court's seizure of assets (as we noted above, some courts have entertained interlocutory appeals from restraining orders in criminal forfeiture, e.g., Monsanto I, 836 F.2d at 77, and in one exceptional case, from a seizure in a civil forfeiture. Statewide Auto Parts, 971 F.2d at 901).[16] Since the denial of a hearing had no effect on Messino's use of the property, the district court's order cannot be characterized as an injunction. Messino therefore has no basis on which to appeal from the district court's interlocutory order denying his motion to dismiss.
 
 V. CONCLUSION
 
 84
 For the reasons given above, we dismiss the claimants' appeal from the denial of their motions to dismiss. We vacate the order striking Clement Messino's claims, forfeiting his property, and vacating the July 2 release of assets, and remand for proceedings consistent with this opinion.
 
 
 85
 FLAUM, Circuit Judge, concurring.
 
 
 86
 The court holds that when the government contemporaneously pursues a criminal action against a defendant and a civil forfeiture action against his property, if a reasonable amount of the assets subject to forfeiture are not left available to enable the defendant to retain his counsel of choice for the criminal proceeding, then--at a point soon enough after initiation of the criminal process to preserve a fair opportunity to prepare an adequate defense--he must be afforded an adversarial hearing at which the government will be required to establish the existence of probable cause that such assets are subject to civil forfeiture. This holding follows naturally from the rule we announced in Moya-Gomez, as the civil forfeiture process is no less threatening to a criminal defendant's heightened property interest in assets necessary for his defense than are the mechanisms of criminal forfeiture, and is consistent with the Supreme Court's obvious reluctance in United States v. James Daniel Good Real Property, --- U.S. ----, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), to put much faith in the protections afforded by ex parte proceedings. Furthermore, since in this context the operative issue is the release of items already seized and not the initial decision whether to seize, offering a prompt hearing on forfeitability would neither defeat the court's jurisdiction over the property nor risk dissipation or destruction of the assets. See id., --- U.S. ---- - ----, 114 S.Ct. at 502-03 (explaining why prior notice and hearing are not required for personal property subject to civil forfeiture).
 
 
 87
 I write separately only to offer several brief observations about today's attempt to modulate the interaction of related civil forfeiture and criminal proceedings. First, I note that the court's analysis makes clear that we have accepted the application of Moya-Gomez in the civil forfeiture context only insofar as the civil seizures affect a defendant's right to select his counsel of choice in a related criminal case, not in the civil forfeiture case itself (or any other civil proceedings). The heightened property interest recognized here and in Moya-Gomez as deserving of special protection is animated by Sixth Amendment concerns that are inapplicable in the civil setting.
 
 
 88
 Second, because today's rule applies to a civil case but is rooted in concern for the conduct of a separate, criminal case, it creates somewhat of a challenge, if not a quandary, for the exercise of appellate jurisdiction. While Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), surely demonstrates that the result of an attorney-fee hearing in a criminal forfeiture proceeding, which is part of a single criminal case against a defendant--i.e. as in Moya-Gomez itself--cannot be appealed as a collateral order, similar deference to the presumption in favor of unitary appeals, as the court indicates, is harder to justify when an appeal from the final judgment in the civil forfeiture case will likely come too late to vindicate the prompt-hearing rule's purpose of insuring that a defendant is not needlessly limited in his choice of counsel in a looming criminal case. However, "effectively unreviewable" is only one prong of the supposedly three-prong test for immediate appealability of collateral orders. Another is whether such a decision resolves an important question completely separate from the merits. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 351 (1978). The court has characterized the district court's order in this case as a determination that the defendant was not entitled to an adversary hearing or the release of sufficient assets to pay attorney's fees. This does make the decision sound separate from the merits of the case, but in the future defendants will typically contend that district courts, which clearly will be attempting to operate under the rule of this case, either released insufficient funds, conducted an inadequate hearing or made an erroneous ruling as to probable cause. It is hard to deny that decisions relative to the latter two areas, especially probable cause, are intimately connected to the ultimate issue of the forfeitability of the seized property. Will appeals in these areas be unavailable because the orders themselves are not final and review of the final judgment in the civil case will probably come too late to be availing? I suggest not. We have noted that separability is not as rigid a component of the collateral order test as is purported, see Palmer v. City of Chicago, 806 F.2d 1316 (7th Cir.1986), cert. denied, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987), and the Supreme Court itself has bent on one or another prong of the general test when the need has been clear. See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); see generally 15A Wright, Miller & Cooper Sec. 3911. Furthermore, while the court has not confronted the issue head-on in today's ruling, the decision to entertain this appeal likely speaks to the "entire category" of related claims, given the Supreme Court's aversion to a case-by-case approach to appealability. See Digital Equipment Corp. v. Desktop Direct, Inc., --- U.S. ----, ----, 114 S.Ct. 1992, 1996, 128 L.Ed.2d 842 (1994). And allowing such appeals in the unique civil/criminal circumstances presented in cases like this one works no great inroad on the general preference for single appeals from final judgments. With these comments, I join the opinion of the court.
 
 
 
 *
 This opinion was circulated among all judges of this Court in regular active service pursuant to Circuit Rule 40(f) because of an apparent conflict with United States v. Consiglio, 866 F.2d 310 (9th Cir.1989). No judge favored rehearing en banc
 
 
 [1]
 Although by "claimants" we refer only to the appellants, there are additional claimants not included in this appeal. Katherine Schultz and Mark I Auto are no longer parties to this appeal
 
 
 [2]
 In Moya-Gomez, we held that a defendant whose assets are restrained in a criminal forfeiture action and who cannot obtain counsel of his choice without access to the restrained assets, has a due process right to an adversary hearing on probable cause for forfeiture. 860 F.2d at 729-30. If the government cannot show probable cause for the forfeiture, the district court must release some of the assets to pay attorney's fees. Id
 
 
 [3]
 The district court described the process it would follow: "If there are assets here [for] which the government does not have enough evidence to overcome what you have stated in your affidavit, then I will enter a summary judgment with respect to those assets in favor of Clem Messino. And then he gets that property.... And then if no assets are releasable, or if they are so insignificant that they don't resolve the problem that you are addressing in terms of a need to be financed if you are going to adequately represent a person, then I will tell you what my decision is ... I will issue an order granting a release of--well, either saying you can file a petition for fees, and under the authority of Moya-Gomez, I will direct the U.S. Marshal to release assets to pay you, or denying it." Tr. 6/23/94, at 23-24
 
 
 [4]
 Messino's affidavit alleged that he had inherited the ring from an uncle and that the ring was not mentioned in the forfeiture complaint. R. 165. The affidavit also alleged that he had purchased the Harley Davidson in 1974, before any allegations of drug activity, and that the motorcycle also was not mentioned in the forfeiture complaint. R. 165. The government's affidavit stated that $20,000 of improvements had been made to the motorcycle between 1985 and 1986, presumably with the proceeds of drug sales. R. 171. Thus the district court allowed the motorcycle to be released to Messino's attorneys as long as he made a $20,000 deposit
 
 
 [5]
 The following exchange provides an illustration:
 ASST. U.S. ATTORNEY: I just wanted to clarify, Your Honor, that Your Honor's first basis for ruling is you're essentially entering summary judgment, dismissing the ring and as an alternative finding that it is releasable under Moya-Gomez?
 COURT: I am entering an order that it be turned over to his attorneys as payment for attorneys' fees. How the world wants to characterize it is up to the world. I'm not going to call it a summary judgment. But once it's out of the custody of the U.S. there's nothing there to replace it, it really moots the issue.
 Tr. 7/2/92, at 14-15.
 
 
 [6]
 Messino also argues that the district court erred when it vacated the July 2 order on July 16, when Messino became a fugitive. Messino argues that the July 2 order gave his attorneys "an interest in the property which could not be extinguished by a subsequent order responding to the misconduct of Clement Messino." Br. at 35. This argument is frivolous. Since neither of Messino's attorneys were claimants to any property not party to this appeal, we will not consider their claims to the property
 
 
 [7]
 Even when the district court does not enter a pre-trial restraining order, the forfeiture scheme nonetheless impacts choice of counsel. Both the civil and criminal drug forfeiture statutes contain "relation back" provisions, under which the United States gains title to the forfeited assets upon commission of the crime. Thus the property is subject to forfeiture even if it has been transferred to third parties before trial. 21 U.S.C. Sec. 853(c); 21 U.S.C. Sec. 881(h). Criminal forfeiture provisions exempt third party purchasers for value who are "reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. Sec. 853(c). The civil forfeiture exemption is somewhat broader, extending not only to purchasers but to donees. 21 U.S.C. Sec. 881(a). But since an indictment or complaint is notice that the property is subject to forfeiture, attorneys cannot avail themselves of the exemptions. This statutory scheme does not violate the Sixth Amendment. Caplin & Drysdale, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989)
 
 
 [8]
 The issue had also arisen earlier in the Monsanto litigation. The defendant in Monsanto sought permission to use assets restrained pursuant to 21 U.S.C. Sec. 853(e) to pay attorney's fees, but the district court denied relief. On appeal, a panel of the Second Circuit held that although the Sixth Amendment did not require an immediate release of assets, due process required notice and a pretrial adversary hearing where the government wished to continue to restrain assets needed to pay counsel. Monsanto I, 836 F.2d at 82-85. The court remanded for a hearing, after which the district court concluded that the government had met its burden of showing that the assets were subject to forfeiture. Meanwhile, the Second Circuit en banc vacated the earlier panel opinion and held that the district court should modify the restraining order to permit the release of assets. Monsanto II, 852 F.2d at 1402. The Supreme Court reversed. Monsanto III, 491 U.S. 600, 109 S.Ct. 2657
 
 
 [9]
 Some early cases required the government to show that it would more likely than not convince a jury beyond a reasonable doubt that the defendant was guilty and the assets were forfeitable. See, e.g., United States v. Crozier, 674 F.2d 1293, 1297-98 (9th Cir.1982), vacated and remanded, 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 873 (1984), aff'd on rehearing, 777 F.2d 1376 (9th Cir.1985); United States v. Spilotro, 680 F.2d 612, 616-18 (9th Cir.1982); United States v. Mandel, 408 F.Supp. 679, 283-83 (D.Md.1976). The 1984 amendments significantly overhauled Sec. 853, clearly establishing that the government should be required to show no more than probable cause that assets are subject to forfeiture. See Monsanto IV, 924 F.2d at 1198-99
 
 
 [10]
 19 U.S.C. Sec. 1615 provides in part that "In all suits or actions ... brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized ... where the property is claimed by one person, the burden of proof shall lie upon such claimant ... [p]rovided, that probable cause shall be first shown for the institution of such suit...."
 
 
 [11]
 Several courts have upheld the constitutionality of this allocation of the burden of proof, see, e.g., United States v. 228 Acres of Land and Dwelling, 916 F.2d 808, 814 (2d Cir.1990), cert. denied, 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991); United States v. Santoro, 866 F.2d 1538, 1542 (4th Cir.1989); but see United States v. Leasehold Interest in 121 Nostrand Avenue, 760 F.Supp. 1015 (E.D.N.Y.1991) (Weinstein, J.), although the Supreme Court has never decided the issue. Cf. Landon v. Plascencia, 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (statutory burden of proof does not satisfy due process as applied to particular members of a class)
 
 
 [12]
 The only question before us is what post-deprivation process is due after the government has seized assets pursuant to a complaint and arrest warrant under 21 U.S.C. Sec. 881. Messino has not argued that any pre-deprivation procedures are necessary with respect to attorney's fees
 
 
 [13]
 By contrast, the government may obtain a pre-indictment restraining order only upon a showing of "a substantial probability" of prevailing on the forfeiture action, and after granting the defendant notice and a hearing. 21 U.S.C. Sec. 853(e)(1)(B)(i)
 
 
 [14]
 The Second Circuit in Monsanto reached a somewhat different conclusion than Moya-Gomez. Monsanto held that if the government did not want to participate in an adversary hearing, it could choose not to restrain the assets, but could seek forfeiture after conviction. 924 F.2d at 1198. In civil forfeiture, this would not be possible: once the property (the ostensible defendant in an in rem action) were removed, it would no longer be forfeitable. In a sense, the probable cause hearing in a civil action has the effect of a summary judgment as to the assets released, although the assets are only released if the defendant can meet the very difficult burden of showing the absence of probable cause to restrain assets. But it does not have the effect of a summary judgment motion as to all of the assets, since the government's failure to establish probable cause at this point in the litigation would only be relevant to the issue of attorney's fees
 
 
 [15]
 The claimants' Notice of Appeal states that they appeal from the grant of a general stay, but this point is never argued in their brief
 
 
 [16]
 In Statewide, the court explicitly premised review on the fact that the seizure shut down an ongoing business; were the defendant allowed some use of his property during the seizure, the court noted it would not have exercised jurisdiction under Sec. 1292(a)(1). Id. at 901