PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

No. 00-4580

WILLIAM HASKELL FARMER,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-00-385)

Argued: October 29, 2001

Decided: December 12, 2001

Before WILKINSON, Chief Judge, GREGORY, Circuit Judge,
and Malcolm J. HOWARD, United States District Judge
for the Eastern District of North Carolina,
sitting by designation.

Vacated and remanded by published opinion. Chief Judge Wilkinson
wrote the opinion, in which Judge Gregory and Judge Howard joined.

## COUNSEL

**ARGUED:** E. E. Edwards, III, Nashville, Tennessee, for Appellant.
Marvin Jennings Caughman, Assistant United States Attorney,
Columbia, South Carolina, for Appellee. **ON BRIEF:** C. Rauch Wise,
Greenwood, South Carolina, for Appellant. Scott N. Schools, United
States Attorney, Columbia, South Carolina, for Appellee.

**OPINION**

WILKINSON, Chief Judge:

Defendant William Farmer seeks a hearing to determine whether he is entitled to fund his criminal defense using some or all of the assets seized pursuant to civil forfeiture statutes prior to his indictment. The district court denied Farmer's request for a hearing. Because Farmer made a substantial showing that some of the seized assets may be both legitimate and necessary to hire an attorney, we vacate the judgment and remand with directions to hold a hearing for the limited purpose of determining whether untainted assets have been seized and whether Farmer requires those assets to hire counsel.

I.

On July 16, 1998, United States Customs Agents executed search warrants at Defendant William Farmer's residence and warehouse. These warrants were obtained upon a showing of probable cause that Farmer was engaged in illegal counterfeiting of clothing trademarks in violation of federal law. During these and subsequent searches, the agents seized, *inter alia*, numerous documents, ten motor vehicles, a big screen television, over 3,000 boxes of merchandise, $160,000 in cashier's checks, and more than $380,000 in cash pursuant to civil forfeiture statutes.

In August 1998, Farmer made a motion in the district court for the return of the seized property. The district court denied Farmer's motion without a hearing. In an attempt to trigger a civil forfeiture proceeding, Farmer then filed a claim and posted a $5,000 cost bond pursuant to 19 U.S.C. § 1608. Farmer also moved a second time for the return of the property. In August 1999, the district court denied Farmer's second motion, concluding that the government was proceeding diligently and that requiring it to return the seized property or institute a forfeiture action could interfere with the government's ongoing criminal investigation of Farmer. No civil forfeiture action was ever commenced.

On May 2, 2000, almost two years after the government seized Farmer's assets, a ten count indictment was handed down against Farmer.

The indictment charged Farmer with, *inter alia*, conspiracy to traffic in clothing bearing counterfeit trademarks in violation of 18 U.S.C. § 371, conspiracy to engage in unlawful financial transactions in violation of 18 U.S.C. § 1956(h), and trafficking in counterfeit clothing and money laundering in violation of 18 U.S.C. §§ 2320 and 1957. In addition, pursuant to 18 U.S.C. § 982, the indictment sought forfeiture of the property previously seized. The indictment indicated that the property was subject to forfeiture as either instruments or proceeds of Farmer's alleged trademark and money laundering violations.

On July 21, 2000, Farmer filed a motion for an immediate adversary hearing to determine if a portion of the seized funds should be released so that he could pay defense costs. Farmer alleged that the government seized all of his substantial assets in 1998, put him out of business in the process, and prevented him from using his own legitimate assets to fund his criminal defense. Farmer argued that he had a Sixth Amendment right to use his legitimate property to hire the attorney of his choice and that he had been deprived of that right without a meaningful opportunity to be heard in violation of the Due Process Clause. Farmer emphasized that the magistrate judge had concluded at arraignment that Farmer was entitled to appointed counsel because he was effectively rendered indigent by the government's seizure of his property. The magistrate reached this conclusion based on Farmer's affidavit and testimony under oath. Furthermore, Farmer argued that Customs officials had admitted that at least some of the merchandise seized was untainted. In response, the United States disputed that Farmer had no substantial assets with which to hire counsel. The government also stressed that Farmer had not challenged the probable cause determination underlying the search warrants used to seize his assets.

On August 10, 2000, the district court summarily denied Farmer's motion for an adversary hearing. Farmer appeals.[1]

---

[1]Farmer's appeal is before this court pursuant to 28 U.S.C. § 1291 and the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546-47 (1949). *See, e.g.*, *United States v. Michelle's Lounge*, 39 F.3d 684, 693-94 (7th Cir. 1994) (collecting cases where courts have reviewed similar orders under the collateral order doctrine); *United States v. Jones*, 160 F.3d 641, 644 (10th Cir. 1998).

## II.

The Supreme Court has made clear that a criminal defendant has no Sixth Amendment right to use illegally obtained funds to hire an attorney. In *Caplin & Drysdale v. United States*, 491 U.S. 617 (1989), the Court concluded that any Sixth Amendment right to obtain counsel of choice does not extend beyond the individual's right to spend his own legitimate, nonforfeitable assets. *Caplin*, 491 U.S. at 624-33. The Court explicitly rejected "any notion of a constitutional right to use the proceeds of crime to finance an expensive defense." *Id.* at 630. And the Court stressed that "there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense." *Id.* at 631. Furthermore, in *Caplin*'s companion case, the Court held that the pretrial restraint of a criminal defendant's assets does not violate the Constitution as long as the assets are restrained based upon a finding of probable cause that they are subject to forfeiture. *United States v. Monsanto*, 491 U.S. 600, 615-16 (1989).

However, *Caplin* and *Monsanto* expressly left open the issue of whether a defendant has a Fifth Amendment right to a pretrial hearing to determine whether some or all of the seized assets may properly be used to fund his criminal defense. In *Monsanto*, the Supreme Court stated:

> We do not consider today, however, whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed. . . .
>
> Though the United States petitioned for review of the Second Circuit's holding that such a hearing was required,

---

Farmer raises various other claims, among them that he is entitled to a release of funds for basic living expenses and that he is entitled to accrued interest on the seized property. However, these matters are beyond the scope of the basic trial right Farmer asserts in this appeal, namely his right to hire the counsel of his choice with his own legitimately obtained assets.

> . . . given that the Government prevailed in the District Court notwithstanding the hearing, it would be pointless for us now to consider whether a hearing was required by the Due Process Clause.

*Monsanto*, 491 U.S. at 615 n.10.

Prior to *Caplin* and *Monsanto*, this court addressed a criminal defendant's due process right to a hearing when his assets are seized pursuant to criminal forfeiture statutes. In *United States v. Harvey*, 814 F.2d 905 (4th Cir. 1987), we stated that "the issuance of *ex parte* restraining orders after indictment without any post-deprivation hearing other than a criminal trial . . . violates fifth amendment due process guarantees" when all of a defendant's substantial assets have been restrained and the defendant seeks to utilize restrained assets to fund his legal defense. *Harvey*, 814 F.2d at 913, 928-29.[2]

Our sister circuits have agreed with the conclusion in *Harvey*. They have held that due process requires a pretrial adversary hearing when a defendant claims that a portion of the assets restrained pursuant to criminal forfeiture statues are untainted and that he has no other funds from which to secure the counsel of his choice. *See, e.g.*, *United States v. Jones*, 160 F.3d 641, 645-49 (10th Cir. 1998); *United States v. Monsanto*, 924 F.2d 1186, 1191-98 (2d Cir. 1991) ("*Monsanto IV*"); *United States v. Moya-Gomez*, 860 F.2d 706, 725-30 (7th Cir. 1988); *United States v. Lewis*, 759 F.2d 1316, 1324-25 (8th Cir. 1985); *United States v. Crozier*, 777 F.2d 1376, 1383-84 (9th Cir. 1985); *United States v. Long*, 654 F.2d 911, 915-16 (3d Cir. 1981). *But see United States v. Register*, 182 F.3d 820, 835 (11th Cir. 1999) (recognizing that the Eleventh Circuit is the "only circuit holding that, although pre-trial restraint of assets needed to retain counsel implicates the Due Process Clause, the trial itself satisfies this requirement"). At least one circuit has also concluded that due process requires an adversary hearing on probable cause "when the district

---

[2]The court in *In re Forfeiture Hearing as to Caplin & Drysdale*, 837 F.2d 637 (4th Cir. 1988) (en banc), did not grant rehearing en banc on this Fifth Amendment issue in *Harvey*. *See* 837 F.2d at 641. And the Supreme Court explicitly reserved the issue in *Monsanto*. *See* 491 U.S. at 615 n.10.

court has found that the government has seized through civil forfeiture all of the assets a criminal defendant needs to obtain counsel." *United States v. Michelle's Lounge*, 39 F.3d 684, 700-01 (7th Cir. 1994).

### III.

Due process requires that a person not be deprived of property without notice and an opportunity for a hearing "at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation omitted). When identifying the specific dictates of due process, three factors must be considered: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the . . . administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). Courts have consistently used this *Mathews* analysis to determine if a defendant is entitled to a postseizure, pretrial adversary hearing. *See, e.g.*, *Harvey*, 814 F.2d at 928; *Jones*, 160 F.3d at 645-47; *Michelle's Lounge*, 39 F.3d at 697-701; *Monsanto IV*, 924 F.2d at 1193-98.

First, Farmer has advanced a "private interest" in obtaining a pretrial hearing. *See, e.g.*, *Jones*, 160 F.3d at 646; *Michelle's Lounge*, 39 F.3d at 697-98; *Monsanto IV*, 924 F.2d at 1193-95. While *Caplin* made absolutely clear that there is no Sixth Amendment right for a defendant to obtain counsel using tainted funds, Farmer still possesses a qualified Sixth Amendment right to use wholly legitimate funds to hire the attorney of his choice. *See, e.g.*, *Caplin*, 491 U.S. at 624-25; *Powell v. Alabama*, 287 U.S. 45, 53 (1932). Farmer's assets were seized pursuant to civil forfeiture, based on the same allegedly illegal activities underlying his current criminal indictment. This places Farmer "in the same position as a criminal defendant whose assets are seized pursuant to criminal forfeiture." *Michelle's Lounge*, 39 F.3d at 697. Therefore, *Harvey* and the cases from our sister circuits that found a private interest in a hearing when assets were restrained pursuant to criminal forfeiture statutes are analogous.

This private interest would be absent if Farmer possessed the means to hire an attorney independently of assets that were seized. Farmer has previously declared under oath that, due to the government's seizure of his property, he does not have funds to hire counsel for his criminal defense. And the magistrate judge concluded, based on Farmer's "affidavit and [Farmer's] answers to [his] questions," that Farmer was effectively rendered indigent by the government's seizure of his property. While the adversary hearing Farmer seeks may call his protestations of indigency into question, the magistrate's explicit finding constitutes a threshold showing that Farmer is without funds to hire the attorney of his choice. If a defendant does not make such a threshold showing of need to use wrongly seized assets to pay his attorneys, "then the private interest of the *Mathews* calculus drops out of the picture, tipping the balance of interests against a post-restraint hearing." *Jones*, 160 F.3d at 647; *see also Michelle's Lounge*, 39 F.3d at 701 (requiring this threshold determination before due process entitles the defendant to a hearing); *Moya-Gomez*, 860 F.2d at 730 (same). In sum, a defendant must "show a bona fide need to utilize [seized] assets . . . to conduct his defense" in order to be entitled to a hearing. *United States v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir. 1998) (internal quotation omitted).

Second, under the circumstances of this case, there is a risk of erroneous deprivation of Farmer's interest in the absence of any hearing. It is true, as the government notes, that the search warrants were issued in this case upon a showing of probable cause to believe that the assets were tainted and that Farmer has failed to challenge the issuance of the search warrants at any point. However, that is not the end of the story. To begin with, there has been no civil forfeiture proceeding commenced, in which Farmer could have contested the legitimacy of the assets, in the nearly two years between the seizure of the assets and Farmer's indictment. Further, one of Farmer's attorneys has submitted an affidavit under oath stating that Customs officials personally admitted to him that many of the items seized were legitimate dry goods which were not counterfeit and had no unauthorized trademarks. The attorney's affidavit reads as follows:

> 4.  In a conversation held shortly before March 5, 1999, Agent Pharis related to [me] that customs had determined that 30 pallets containing NFL jackets, raincoats, boots, key

chains and Super Bowl hats were in fact legitimate goods. Agent Pharis further stated that a substantial quantity of Tommy Hilfiger merchandise [was] legitimate but they wanted to check to see if any of that merchandise had been taken from Dillard's as that store had incurred a major theft.

An attorney's declaration under oath that government agents personally admitted to him that legitimate assets were seized is not a matter we can summarily discount. Allowing Farmer to rebut the government's showing of probable cause "would afford [him] an important opportunity to be heard before his assets to pay attorneys are, in effect, permanently seized." *Michelle's Lounge*, 39 F.3d at 700; *see also Jones* 160 F.3d at 646-47; *Monsanto IV*, 924 F.2d at 1195.

Finally, the government would not be unduly burdened by the hearing Farmer seeks. *See, e.g.*, *Jones*, 160 F.3d at 647; *Michelle's Lounge*, 39 F.3d at 700. The fact that Farmer's representations of indigency were credited by the magistrate judge and that his attorney averred under oath that the government's own agents have conceded the legitimate character of at least a portion of the seized assets does not mark this as a case that will open the floodgates to hearings on flimsy or insubstantial grounds. Such threshold showings "protect the government and its resources from frivolous challenges" to forfeitures. *Jones*, 160 F.3d at 647. Furthermore, at oral argument the government conceded that it is not opposed to giving Farmer a hearing if he shows that he lacks the ability to hire an attorney. The government merely disputes the conclusion that Farmer has made a sufficient initial showing regarding his need to use seized assets to hire counsel.

Considering the three *Mathews* factors as they apply to Farmer, we conclude that due process requires a hearing for him to challenge probable cause. We stress, however, that this is a hearing for limited purposes. *See Jones*, 160 F.3d at 647-48 (noting limited nature of hearing); *Michelle's Lounge*, 39 F.3d at 701 (same). When assets are seized pursuant to civil forfeiture, the hearing right applies "only insofar as the civil seizures affect a defendant's right to select his counsel of choice in a related criminal case, not in the civil forfeiture case itself." *Michelle's Lounge*, 39 F.3d at 704 (Flaum, J., concurring); *see also id.* at 698. And the hearing is certainly not the forum to reach a

definitive conclusion on the legality of each asset seized. Instead, a brief hearing will provide an opportunity for Farmer to prove by a preponderance of the evidence that the government seized untainted assets without probable cause and that he needs those same assets to hire counsel. *See, e.g.*, *Michelle's Lounge*, 39 F.3d at 701; *Monsanto IV*, 924 F.2d at 1194. The government for its part may present evidence that Farmer has other substantial assets with which to hire attorneys and/or evidence of probable cause to believe that the seized assets are tainted and forfeitable.

"Due process does not automatically require a hearing and a defendant may not simply ask for one." *Jones*, 160 F.3d at 647. District courts enjoy broad discretion to determine the need for hearings of this sort, and appellate courts remain properly respectful of the trial courts' supervision of such pretrial proceedings. Here, however, because the magistrate judge credited Farmer's initial representations that the government had seized all of his substantial assets, and because counsel has sworn in a detailed affidavit that the government's own agents acknowledged that many seized assets were legitimate, we hold that the Due Process Clause requires an adversary hearing for the purpose described above.

### IV.

For the foregoing reasons, we vacate the judgment of the district court and remand with directions to hold a hearing to determine whether there are untainted, legitimate assets in the government's possession and whether those assets are necessary for Farmer to hire counsel for his criminal defense.

*VACATED AND REMANDED*