**UNITED STATES of America,**

v.

**Kyong Suk ST. GEORGE, a/k/a Sukie.**

**No. 3:02–CR–84.**

United States District Court,
E.D. Tennessee,
at Knoxville.

Jan. 16, 2003.

**876**

Harvey S. Mattice, Jr., United States Attorney, Knoxville, TN, for plaintiff.

Ralph E. Harwell, Knoxville, TN, for defendant.

### MEMORANDUM AND ORDER

JARVIS, District Judge.

. On July 17, 2002, the grand jury returned a 141–count indictment charging defendant Kyong Suk St. George, a/k/a Sukie (St.George), and four others with a Racketeer Influenced and Corrupt Organizations (RICO) conspiracy covering approximately five years, a substantive RICO count, money laundering counts, and interstate transportation for the purpose of prostitution, in violation of what is commonly known as the Mann Act. The indictment also contains five criminal forfeiture counts. On July 23, 2002, the government filed an *ex parte* motion for a restraining order pursuant to 18 U.S.C. § 1963(d)(1)(A)[1] and 21 U.S.C. § 853(e)(1)(A).[2] That same day, the court granted the government's *ex parte* motion and entered a restraining order [Doc. 5] prohibiting St. George from alienating, transferring, selling, encumbering or disposing of the real property located at 5482 Highway 321 North in Lenoir City, Tennessee, and/ or the currency, funds, or

---

**1.** 18 U.S.C. § 1963(d)(1)(A) provides as follows:

Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section–

(A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; . . .

**2.** 21 U.S.C. § 853(e)(1)(A) provides as follows:

(e) **Protective orders**

(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section–

(A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under the this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; . . .

other monetary instruments credited to her bank account at First National Bank in Lenoir City, Tennessee, her bank account at First National Bank of Loudon County, Tennessee, and her bank accounts at First Tennessee Bank in Knoxville, Tennessee.[3]

This matter is presently before the court on St. George's motion to modify the *ex parte* restraining order so that she might utilize some portion of those restrained assets to retain the services of her attorney of choice, Ralph E. Harwell, to represent her in this matter [*see* Doc. 62]. St. George also requests a hearing on that issue [*see* Doc. 66]. The issues raised have been exceptionally well briefed by the parties [*see* Docs. 63, 65, 66, 79, 85, 102, and 105], and oral argument was heard on October 31, 2002 [*see* Doc. 76].[4] For the reasons that follow, St. George's motions will be denied without prejudice.

## I.

The indictment in this case charges that The Bamboo Spa, located at 5482 Highway 321 in Lenoir City, Tennessee, was operated as part of a RICO enterprise as a front for prostitution. The indictment also alleges that, at various times, St. George was an owner/operator of this spa, as well as an on-site manager. As alleged in the description of the manner and means by which the RICO enterprise operated, the defendants, among other things, committed acts of bribery in attempts to influence public officials in violation of Tennessee state law, charged credit cards of their "Johns" through the use of interstate telephone calls (made from the spas, including the real property at issue), in violation of 18 U.S.C. § 1952, and laundered spa proceeds by making payments to promote the illegal prostitution business conducted on the real property at issue in violation of 18 U.S.C. § 1956. The indictment alleges that the real property is forfeitable for the following reasons:

1. It is property acquired or maintained in violation of RICO (18 U.S.C. § 1963(a)(1));

2. It is property constituting an interest in the RICO enterprise or which affords a source of influence over the RICO enterprise (18 U.S.C. § 1963(a)(2)); and

3. It is property constituting, or derived from, proceeds which the defendants obtained as a result of their pattern of RICO activities.

In addition to the real property, the *ex parte* order restrains Account No. 0051268 at the First National Bank in Lenoir City, Tennessee, in the name of Sukie K. St. George, d/b/a Bamboo Spa. According to the indictment, this particular bank account was utilized to promote and conduct the unlawful business affairs of the Bamboo Health and Massage Spa. The *ex parte*

---

3. Because of the unavailability of the undersigned on that date, the Honorable R. Leon Jordan, Senior United States District Judge, entered the *ex parte* restraining order [*see* Doc. 5, p. 4].

4. The record reflects that the parties were given additional time to brief these issues after the Halloween hearing; in fact, the final brief was not filed by the government until December 19, 2002 [*see* Doc. 105]. Thus, this matter was not ripe for adjudication until almost two months after the hearing date. Moreover, the Speedy Trial Act deems as excludable time the period of delay up to 30 days during which this motion "is actually under advisement ...." 18 U.S.C. § 3161(h)(1)(J). Consequently, because this memorandum and order was filed before that deadline, *i.e.*, on or before January 21, 2003, all of the time period from the filing of St. George's motion to modify *ex parte* restraining order (October 11, 2002) to the date of filing of this memorandum and order is fully excludable pursuant to the Speedy Trial Act. *See also id.*

order also restrains Account No. 2550408 at the First National Bank of Loudon County, Tennessee, in the name of Sukie K. St. George, on the basis that it is subject to forfeiture pursuant to 18 U.S.C. § 1963(a)(1) as an interest of St. George acquired or maintained in violation of 18 U.S.C. § 1962. Finally, the *ex parte* order restrains Account No. 100032988 at the First Tennessee Bank in Knoxville, Tennessee, in the name of Kyong Suk St. George, d/b/a Lakemont Spa, and Account No. 100258042 at that same bank in the name of Kyong Suk St. George.

## II.

A review of the parties' briefs indicates that each side has now made certain concessions. On the one hand, St. George concedes that neither 21 U.S.C. § 853 nor 18 U.S.C. § 1963 makes an exception for assets which a defendant wishes to utilize to retain an attorney. *See United States v. Monsanto,* 491 U.S. 600, 614, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) ("We conclude that there is no exemption from § 853's forfeiture or pretrial restraining order provisions for assets which a defendant wishes to use to retain an attorney."). Furthermore, St. George concedes that the law is clear that the pretrial restraint of a defendant's assets under either 21 U.S.C. § 853(e)(1)(A) or 18 U.S.C. § 1963(d)(2) based on a finding of probable cause to believe that the assets are forfeitable, does not impermissibly interfere with a defendant's right to counsel of choice under either the Fifth or Sixth Amendments to the United States Constitution. *See id.* at 614–15, 109 S.Ct. 2657.

On the other hand, the government concedes that the defendant "may be entitled to a hearing concerning the restraint of the subject properties if she can demonstrate that, absent a lifting of the restraint on her assets, she is unable to afford to

pay for her counsel." [*See* Doc. 85, pp. 3–4]. The heart of the remaining disagreement is the nature of any such hearing and which party bears the burden of proof at such a hearing.

■ At the outset, the court observes that neither the Supreme Court nor the Sixth Circuit has established any controlling precedent on these issues. The court has carefully considered all of the authorities relied upon by the parties and is persuaded that the procedure utilized by the Tenth Circuit in *United States v. Jones,* 160 F.3d 641 (10th Cir.1998), is the most fundamentally and constitutionally sound. *See also United States v. Jamieson,* 189 F.Supp.2d 754, 757–58 (N.D.Ohio 2002) (employing the *Jones* analysis to require that the defendant make a prima facie showing that he has no assets to retain counsel in the criminal case and that the grand jury erred in all or a part of the forfeiture section of the indictment).

### A.

■ St. George's first requirement under *Jones* is to persuade the court that she has no funds from which to retain counsel of her choosing, in this case, the services of Mr. Harwell. To that end, St. George filed her affidavit on December 11, 2002, outlining her family and financial situation [*see* Doc. 101]. A fair reading of that affidavit indicates that the defendant has little, if any, financial resources as a result of the restraining order filed in this case. Even if this court were to embrace the broad procedure utilized by the Seventh Circuit in *United States v. Kirschenbaum,* 156 F.3d 784 (7th Cir.1998), and inquire into the availability of other assets to meet those obligations, *i.e.,* does St. George or any of her family members or even friends have funds which could be made available to her to meet the obligations of retaining

counsel, St. George testifies as follows in her affidavit:

.    .    .    .    .

16. I borrowed $2,000 from my friend, Abe Tayeh, to pay some of my bills.

17. In September 2002, I also borrowed some money from my stepbrother to pay the rest of my bills and to pay my living expenses [.]

18. Unfortunately, the money I borrowed from Mr. Tayeh and from stepbrother is now almost gone.

19. My stepbrother suffers from liver disease and is in need of a liver transplant.

20. He comes to the United States for his medical treatment.

21. Because he is a resident of Korea, my stepbrother has no health insurance and must pay for his own medical treatment (including the liver transplant).

22. My stepbrother has told me that he would like to help me, but that he does not have the financial ability to assist me in retaining counsel.

23. I do not have any other friends or family members from whom I can borrow money to assist me in retaining counsel.

24. I do not have any other sources from which I can borrow money to assist me in retaining counsel.

[Doc. 101]. Based on this testimony of St. George, the court finds, for purposes of her pending motion, that she desperately needs to utilize the restrained assets to fund her legal defense; otherwise, she will not be able to employ Mr. Harwell pursuant to their written agreement [*see* Doc. 64, attachment (filed under seal)].[5] Thus, for purposes of the pending motion, the court finds that the defendant has satisfied the first prong of the *Jones* test.

**B.**

█ The second prong of the *Jones* test which the defendant must meet is as follows:

A defendant must also make a prima facie showing of a bona fide reason to believe that the grand jury erred in determining that the restrained assets "constitute[ ] or [are] derived directly or indirectly, from gross proceeds traceable to the commission of the offense." 18 U.S.C. § 982(a)(6). By requiring as much from a defendant, we protect the government and its resources from frivolous challenges. We stress that although an accused bears the burden of persuasion on the first requirement,[6] the second entails only a burden of production. Once a defendant satisfies these initial burdens, due process requires a district court to conduct an adversarial hearing at which the government must establish probable cause to believe that the restrained assets are traceable to the underlying offense. . . .

We do not require, as defendants urge, that the government re-establish probable cause to believe that defendants are guilty of the underlying healthcare offense. . . .

---

**5.** The employment agreement between Mr. Harwell and St. George was originally filed in order for the court to determine the reasonableness of the fee arrangement. Because the issues in this case no longer require the court's determination on that fee arrangement, the court is making no representations regarding its reasonableness.

**6.** Again, the first requirement is that the defendant must demonstrate to the court's satisfaction that he or she has no assets, other than those restrained, with which to retain private counsel.

By limiting the scope of the post-restraint inquiry to the traceability of the assets, we do not mean, however, to preclude any discussion of the underlying offense. The government may describe and explain the underlying charge, it simply bears no burden of persuasion on the issue. The district court must take those allegations of the indictment as true and assume at the hearing that the underlying offense has been committed.

*Jones*, 160 F.3d at 647–48. *See also Jamieson*, 189 F.Supp.2d at 757 ("The Defendant has the burden of production of evidence which would lead to [sic] the Court to believe that there are assets which should not be burdened by the restraining order.").

In this case, St. George has taken the position that once she has demonstrated to the court's satisfaction that she has no assets, other than those restrained, with which to restrain private counsel, then the burden shifts to the government to demonstrate the basis for its assertion that the restrained assets are subject to forfeiture. The court respectfully disagrees. Rather, under the *Jones* and *Jamieson* analyses, the burden presently remains with St. George to "make a prima facie showing of a bona fide reason to believe that the grand jury" improperly restrained her assets. *See Jones*, 160 F.3d at 647; *Jamieson*, 189 F.Supp.2d at 757. On this specific issue, St. George has introduced no evidence whatsoever into the record.[7]

St. George has, however, intimated in her response that the real property at issue and the bank accounts at issue were derived from the co-mingling of arguably forfeitable property with "untainted" property. St. George relies in part on *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001), in support of her position on this issue. Nevertheless, the facts of *Farmer* are readily distinguishable from those in the instant case. In *Farmer*, one of the defendant's attorneys had submitted to the court an affidavit stating that certain customs officials had personally admitted to him that many of the items seized were legitimate dry goods which were not counterfeit and had no unauthorized trademarks. *Id.* at 805. The Fourth Circuit then noted:

> An attorney's declaration under oath that government agents personally admitted to him that legitimate assets were seized is not a matter we can summarily discount.

*Id.*

Here, by contrast, there is no admission in the record by the government or any of its agents or attorneys that some of the assets seized were legitimate. To the contrary, the government has vigorously contended since the inception of this litigation that the real property at issue was a house of prostitution and that the bank accounts at issue were the house of prostitution's bank accounts. Thus, the court is constrained to conclude that, based on the present record, defendant has not satisfied the second prong of the *Jones* test by offering any evidence that either the real property or the bank accounts at issue are improperly restrained assets, *i.e.*, that they are "untainted." The court therefore finds, contrary to St. George's position, that the burden has not shifted to the government at this juncture by St.

---

7. It is, of course, understandable that St. George has introduced no evidence on this issue because she has consistently taken the position that the burden has now shifted to the government on this issue. Because the court has rejected defendant's position on this issue, the burden still remains with St. George.

George's mere allegation that some of these assets are "untainted."

To hold otherwise would ignore the purpose behind Congress' enactment of 18 U.S.C. § 1963(e)(1) authorizing post-indictment restraining orders without first holding a hearing. *See United States v. Musson*, 802 F.2d 384, 386 (10th Cir.1986) ("Congress wanted to remove limitations upon the effectiveness of forfeiture remedies. Toward this end, Congress recognized that prosecutors often decline to pursue a restraining order for fear of damaging their eventual prosecution of defendants by prematurely disclosing their evidence and strategy.") The court agrees with the government that if prosecutors are forced to reprove the probable cause already shown to the grand jury, without a threshold showing by the defendant that the property has been wrongfully restrained, the pre-conviction restraint tool might not be effectively employed by prosecutors as Congress clearly intended. Furthermore, the legislative history to the Comprehensive Crime Control Act of 1984 Amendments supports the court's holding on this issue:

> Although current law does not authorize the issuance of restraining orders in the post-indictment period, neither the RICO or [Continuing Criminal Enterprise] statute articulates any standard for the issuance of these orders. Certain recent court decisions have required the government to meet essentially the same stringent standard that applies to the issuance of temporary restraining orders in the context of civil litigation and have also held the Federal Rules of Evidence to apply to hearings concerning restraining orders in criminal forfeiture cases. In effect, such decisions allow the courts to entertain challenges to the validity of the indictment, and require the government to prove the merits of the underlying criminal case and

> forfeiture counts and put on its witnesses well in advance of trial in order to obtain a [restraining order] .... These requirements make pursuing a restraining order inadvisable from the prosecutor's point of view because of the potential for damaging premature disclosure of the government's case and trial strategy for jeopardizing the safety of witnesses and victims in racketeering and narcotics trafficking cases who would be required to testify at the restraining order hearing.

S.Rep. No. 225, 98th Cong., 2nd Sess., 206 n. 42 (1983), *reprinted in* 1984 U.S.C.A.A.N. 3182, 3378–79 (1983). Congress further concluded that the courts should not require the government to reestablish probable cause after an indictment. "For the purposes of issuing a restraining order, the probable cause established in the indictment ... is to be determinative of any issue regarding the merits of the government's case on which forfeiture is to be based." 1984 U.S.C.A.A.N. at 3389 n. 42 (1983). Nevertheless, according to this legislative history, the defendant may be given an opportunity to prove that the properties were restrained in error. In such a hearing following the indictment and the entry of a protective order, "the court may at that time modify the order or vacate an order that was clearly improper (*e.g.*, where information presented at the hearing shows that the property restrained was not among the property named in the indictment)." *Id.* See also *United States v. Real Property in Waterboro*, 64 F.3d 752, 755–56 (1st Cir. 1995) (*citing* legislative history of 21 U.S.C. § 853(e) in refusing to allow a challenge to the forfeiture provisions of the underlying indictment). Thus, all of this legislative history suggests that St. George may be given the opportunity to

rebut the grand jury finding that probable cause exists, but she must come forward with some evidence in advance of that hearing to suggest that the grand jury erred. This St. George has failed to do.

### III.

Therefore, for the reasons foregoing, St. George's motion to modify *ex parte* restraining order [Doc. 62] and her request for hearing [Doc. 66] are hereby DENIED WITHOUT PREJUDICE.