**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4718**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEPHEN CONDON PETERS,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:17-cr-00411-D-1)

Submitted:  July 30, 2021                                Decided:  September 9, 2021

Before GREGORY, Chief Judge, WILKINSON, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

William R. Terpening, TERPENING LAW, PLLC, Charlotte, North Carolina, for Appellant.  G. Norman Acker, III, Acting United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Banumathi Rangarajan, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Stephen Condon Peters of investment advisor fraud, in violation of 15 U.S.C. §§ 80b-6, 80b-17; 18 U.S.C. § 2 (Count 1); fraud in the sale of unregistered securities, in violation of 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 (Count 2); wire fraud, in violation of 18 U.S.C. §§ 1343, 2 (Counts 3-11); money laundering, in violation of 18 U.S.C. §§ 1957, 2 (Counts 12-15); conspiring to make and use false documents and to falsify and conceal records, in violation of 18 U.S.C. § 371 (Count 16); making and using false documents, in violation of 18 U.S.C. §§ 1001(a)(1)-(3), 2 (Count 17); falsifying and concealing records and aiding and abetting, in violation of 18 U.S.C. §§ 1519, 2 (Count 18); corruptly endeavoring to influence a federal agency, in violation of 18 U.S.C. § 1505 (Count 19); and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 2 (Count 20). The district court sentenced Peters to an aggregate sentence of 480 months' imprisonment and ordered him to pay $15,161,620 in restitution. On appeal, Peters contends that the district court's pretrial restraint of his assets interfered with his Sixth Amendment right to hire the counsel of his choice, insufficient evidence supports his conviction on Count 2, and the court erred in awarding restitution for losses not associated with Peters' sale of promissory notes ("Capital Notes") issued by VisionQuest Capital ("VQ Capital"). Finding no reversible error, we affirm.

I.

Peters first contends that the district court allowed the Government to freeze untainted assets which prevented him from being able to pay his attorneys. The Government argues that we must review this contention for plain error because Peters did

2

not raise this argument in the district court. *See United States v. Cohen*, 888 F.3d 667, 680 (4th Cir. 2018) (reviewing unpreserved Sixth Amendment claim for plain error). We agree—at a hearing to address the preindictment restraint of his assets, Peters did not argue that the Government was freezing untainted funds needed to hire counsel. And at the hearing on counsels' motion to withdraw, Peters did not argue that the Government had seized untainted assets. To succeed on plain error review, Peters must show that "(1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 890 F.3d 480, 491 (4th Cir. 2018) (cleaned up).

The Sixth Amendment preserves a defendant's "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). The erroneous deprivation of the right to counsel of choice in violation of the Sixth Amendment is structural error not subject to a harmless error analysis. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006).

A defendant does not have a Sixth Amendment right to use tainted, forfeitable assets to hire counsel of his choice. *Caplin & Drysdale*, 491 U.S. at 631. However, "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis v. United States*, 136 S. Ct. 1083, 1088 (2016). So long as assets are neither traceable to nor obtained as a result of the crime, the pretrial restraint of these assets is not permitted if it will impede the defendant's right to secure counsel of choice, even if the funds might later be forfeitable as substitute assets. *Id.* at 1087-88.

3

Long before *Luis*, we held in *United States v. Farmer*, 274 F.3d 800, 805-06 (4th Cir. 2001), that a defendant has a due process right to a pretrial adversarial hearing to determine whether assets seized by the Government prior to trial were legitimate, nonforfeitable assets needed to enable him to retain counsel of his choice. To trigger the right to such a hearing, the defendant must make a threshold showing that he needs the restrained assets to pay counsel and that "the [G]overnment seized untainted assets without probable cause." *Id.* at 804-05.

We discern no plain error in this case. At the preindictment restraint hearing, Peters only argued that $330,000 of the assets seized were untainted, and Peters musters no argument on appeal to show that the district court's rejection of this argument was in error. It was not until counsel moved to withdraw that any issue with paying for counsel appeared in this case. Moreover, once the fee dispute arose, the district court appointed counsel to represent Peters under the Criminal Justice Act, 18 U.S.C. § 3006A. We find this case to be analogous to *United States v. Ballard*, 727 F. App'x 757, 759 (4th Cir. 2018) (No. 16-4696). Although *Ballard* is unpublished, an unpublished Fourth Circuit case contradicting appellant's argument "suggests that even if the district court erred, such error was not plain." *United States v. Garcia-Lagunas*, 835 F.3d 479, 496 (4th Cir. 2016). Therefore, Peters is not entitled to relief on his Sixth Amendment claim.

II.

Peters argues that the district court erred in denying his motion for judgment of acquittal on Count 2 because the Government failed to prove that the Capital Notes were securities. "We review the denial of a motion for judgment of acquittal de novo." *United*

4

*States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018). In assessing the sufficiency of the evidence, we determine whether there is substantial evidence to support the convictions when viewed in the light most favorable to the Government. *Id.* "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez-Soriano*, 931 F.3d 281, 286 (4th Cir. 2019) (cleaned up). In making this determination, we may not resolve conflicts in the evidence or evaluate witness credibility. *Savage*, 885 F.3d at 219. "A defendant who brings a sufficiency challenge bears a heavy burden, as appellate reversal on grounds of insufficient evidence is confined to cases where the prosecution's failure is clear." *Id.* (internal quotation marks omitted).

To secure a conviction on Count 2, the Government was required to "prove that in connection with the purchase or sale of a security the defendant, acting with scienter, made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device" and that the defendant did so willfully. *United States v Villar*, 729 F.3d 62, 88 (2d Cir. 2013) (internal quotation marks omitted). A security is defined, as relevant here, as "any note." 15 U.S.C. §§ 77b(1), 78c(10).[1]

We conclude that the Government introduced more than sufficient evidence to establish that the Capital Notes were securities. In *Reves v. Ernst & Young*, 494 U.S. 56 (1990), the Supreme Court elaborated on the definition of a "note." The Court clarified

---

[1] "These two sections differ only slightly as far as wording and are generally accepted to be indistinguishable." *Teague v. Bakker*, 35 F.3d 978, 986 n.6 (4th Cir. 1994).

that "the phrase any note should not be interpreted to mean literally any note, but must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts." *Id.* at 63 (internal quotation marks omitted). However, the Court stated that there is "a presumption that every note is a security." *Id.* at 65 (internal quotation marks omitted). The Court set forth several factors to consider in determining whether a transaction with a note involves a security. *Id.* at 66.

First, a court must "examine the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it." *Id.* "If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the investment is likely to be a security." *Id.* (internal quotation marks omitted). That is the situation here. Peters promised his victims an eight or nine percent return on their investment, and he purported to use this money to buy new businesses.

Second, a court should "examine the plan of distribution of the instrument, to determine whether it is an instrument in which there is common trading for speculation or investment." *Id.* at 66 (cleaned up). Peters created the Capital Notes for his clients to invest in VQ Capital. Third, a court must "examine the reasonable expectations of the investing public." *Id.* The public would expect that the Capital Note is a security as the victims expected them to be part of their investment portfolios. Finally, we are to "examine whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." *Id.* at 67. Peters points to no such other regulatory body, and Peters himself

6

admitted that he registered the Capital Notes with the Securities and Exchange Commission because he learned in 2016 that they might be securities. Therefore, we affirm Peters' convictions.

## III.

Finally, Peters contends that the district court erred in awarding restitution to one victim for assuming Peters' mortgage on a property she jointly owned with him and to his non-Capital Notes investors.[2] We review a district court's award of restitution for abuse of discretion. *United States v. Steele*, 897 F.3d 606, 609 (4th Cir. 2018).

> Under the [Victim Witness Protection Act (VWPA), 18 U.S.C. § 3663], a district court may order a convicted criminal to pay restitution to "any victim" of his offense. In determining the amount of restitution to be paid, the court shall consider the amount of the loss sustained by any victim as a result of the offense and other factors as the court deems appropriate. In general, restitution pursuant to the VWPA is permissible only for the loss caused by the specific conduct that is the basis of the offense of conviction. A proper restitution award must be limited to the losses caused by the specific conduct of which the defendant is convicted. While not necessarily fixed by the description given in the corresponding charge itself, the award may not include losses unrelated to the count of conviction.

*United States v. Henoud*, 81 F.3d 484, 488 (4th Cir. 1996) (cleaned up).

We conclude that the non-Capital Notes losses were part of Peters' offense of conviction. Count 1 was not limited to the Capital Notes. And the trial evidence showed

---

[2] Peters also argues that the district court erred in including these losses in calculating his Sentencing Guidelines range. However, any error was harmless because the losses associated with the Capital Notes exceeded $9.5 million. *See* U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(K) (2018); *United States v. Dowell*, 771 F.3d 162, 175-76 (4th Cir. 2014) (concluding Guidelines error was harmless because it did not increase defendant's Guidelines range).

that Peters used a similar scheme to solicit investments in these other businesses—Peters stated that they were income-producing properties, the language in the notes was similar to those used in the Capital Notes, and he used proceeds from the victim's investment in Blue Horseshoe Capital to finance his portion of the farm purchase. The Government only requested restitution for clients of VQ Management. Finally, the Government's case agent testified at sentencing regarding her methods for calculating the restitution and the documentation she used to substantiate the victims' losses. Therefore, we discern no abuse of discretion.

IV.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*